SLATEN *et al. v.* TRAVELERS INSURANCE COMPANY *et al.*

No. 14648.   November 9, 1943.   Rehearing denied December 2, 1943.

2

*Woodruff, Ward & Etheridge,* and *Lokey & Bowden,* for plaintiffs. *Neely, Marshall & Greene,* for defendants.

DUCKWORTH, Justice. The purpose of the workmen's compensation act (Code, title 114) was to substitute a method of accident insurance in the place of the common-law rights and liabilities for substantially all employees. It is a humanitarian measure enacted to avoid the evils which actions for torts had entailed. Under the old law the injured employee could recover from the employer damages only by proving that the employer was at fault; and the procedure for obtaining this relief was attended with protracted litigation, thus preventing the employee and his dependents from receiving financial aid immediately following the injury, during which time he often experienced the greatest financial distress. Our act was not made compulsory; but as evidence of the legislative desire that it be voluntarily accepted by all to whom it is applicable, certain inducements are held out to facilitate its acceptance. Therefore the act should be interpreted in the light of this purpose, and, so far as the rules of construction will permit, to promote the accomplishment of its beneficent design. It attempts to provide immediate financial assistance for injured employees, without regard to whether or not the injury resulted from the fault of the employer, the single and only requirement being that the injury resulted from an accident arising out of and in the course

of the employment. It fixes the maximum that can be recovered by any employee, and thus protects the employers against excessive recoveries of damages. It is obvious that the legislature was primarily concerned with industries and businesses located in this State, and the employers and employees who are engaged in the types of employment covered by the act. Therefore courts should interpret the act, if its language will permit, so that its benefits will be denied to none of these people. As to employers and employees who otherwise meet the requirements of the act, the bare fact that they engage in work in this State without giving the notice, as required by the act, of their refusal to have the act operative as to them automatically brings the provisions of the act into operation, in so far as injury arising out of the Georgia employment is concerned, regardless of where the accident·itself may have occurred. Code, § 114-201. The section just cited is not concerned about where the contract of employment was made, but without regard to that matter provides that where the work is begun in Georgia the employer and employee are presumed to have agreed that the law shall operate as to them, and to pay and accept compensation as therein provided for injuries resulting from accidents arising out of and in the course of the employment. Obviously the legislature knew that Georgia industries and businesses extend the field of their operations beyond State lines, and, hence, understood the plain meaning of the words, "arising out of and in the course of the employment," and therefore intended that compensation cover the entire field of operations, without regard to State lines. Since the parties are authorized by this section to reject the law, their failure to reject it constitutes a voluntary acceptance, and obligates them to settle all accidental injuries arising out of and in the course of the employment on the basis prescribed in the act.

A spirited controversy exists throughout this country as to whether, in the absence of express provisions in the workmen's compensation act, it will be given extraterritorial operation. Some courts have held that such a statute should not be construed to operate beyond State lines, and that it can be so construed only when it contains an express provision to that effect. Other courts hold that where the acceptance of the act is voluntary, as is ours, the parties by voluntarily agreeing to come under its operation

thereby make the provisions of the law a part of their contract of employment, and its operation stops at no State line. For cases on this subject see annotations in 3 A. L. R. 1351; 18 A. L. R. 292; 28 A. L. R. 1345; 35 A. L. R. 1414; 45 A. L. R. 1234; 59 A. L. R. 735; 82 A. L. R. 709; 1 Schneider, Workmen's Compensation Law (2d ed.), 411, § 47; 1 Schneider, Workmen's Compensation Law (perm. ed.), 447, § 155. A case adopting the latter view is Grinnell v. Wilkinson, 39 R. I. 447 (98 Atl. 103, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618). The opinion cites Kennerson v. Thomas Towboat Co., 89 Conn. 367 (94 Atl. 372, L. R. A. 1916A, 436); Post v. Burger, 216 N. Y. 544 (111 N. E. 351, Ann. Cas. 1916B, 158), and Rounsaville v. Central R. Co., 87 N. J. L. 371 (94 Atl. 392), and says: "We are of the opinion that the reasoning of the cases above cited from New York, New Jersey, and Connecticut is quite applicable to the case at bar; that under the workmen's compensation act of Rhode Island the relation of employer and employee is contractual, and the terms of the act are to be read as a part of every contract of service between those subject to its terms; that on principle and in reason, and in view of the purpose, scope, and character of the act, it should be construed and held to include injuries arising out of the State as well as those arising within it; and that the weight of authority upon acts similar to our own gives full support to our conclusion." The decision just quoted from was cited with approval in Industrial Commission v. Ætna Life Insurance Co., 64 Colo. 480 (174 Pac. 589, 3 A. L. R. 1336). In the New Jersey decision, supra, the court said: "We are now dealing with the simpler question, whether a New Jersey court will enforce a New Jersey contract, according to the terms of a New Jersey statute. The question hardly calls for an answer. The place where the accident occurs is of no more relevance, than is the place of accident to the assured, in an action on a contract of accident insurance, or the place of death of the assured, in an action on a contract of life insurance." In the Kennerson case, supra, the court, in construing the Connecticut compensation act, said: "Its intent was to afford its protection to all Connecticut employers and employees who might voluntarily choose to make its provision for compensation for injury a part of their contracts of employment. It assumed that accident is incident to employment, and purposed to charge its cost, in the case of every injury not

caused by the wilful and serious misconduct or intoxication of the injured employee, to the industry in which it occurred. It intended that the employee should know what compensation he or his dependents would receive in the event of injury, and that payment should be made speedily by a procedure at once simple and inexpensive. It intended that the employer should know his liability in this regard, and so might include it among the items charged to operation. If our act intends its contracts of employment to include compensation for injuries occurring only within our jurisdiction, it manifestly defeats its own ends. In that case the employer may not charge to the industry the compensation for injuries occurring without the State, and the employee or his dependents may not collect the same."

The above quotations are applicable to our compensation act. No attempt is made to restrict the injuries compensable to any geographical area or to within the boundary lines of this State. On the contrary, it is plainly stated that the compensation therein provided for shall be for injuries resulting from accidents arising out of and in the course of the employment. The legislature, except as will be hereinafter discussed, made no effort and expressed no intention to restrict, as to place, compensable injuries, requiring only that they result from accident and that the accidents arise out of and in the course of employment. In Pierce *v.* Bekins Van & Storage Co., 185 Iowa, 1346 (172 N. W. 191), the court, in holding that compensable injuries were limited to place only to the extent that the accident must arise out of and in the course of the employment, and that the only limitation was the relation of the injury to the duty, said: "No exception based on the place where the injury occurs is found in the language, and if it is to be ingrafted upon that language it must be done by judicial legislation." In 28 R. C. L. 724, § 19, it is said: "It is hard to see what difference it can make whether the locus of calamity is on the near or far side of the State line." It is difficult to believe that the legislature of this State enacted this law for the purpose of protecting both employer and employee from the evils of the old law, and at the same time intended that both be thrown into a virtual maelstrom of uncertainty, delay, and loss, by requiring that every time the employee crossed the State line, notwithstanding the fact that in doing so he is prosecuting the business of the employer and is

within the course of his employment, he must look to a different jurisdiction and acquaint himself with the laws of that State, and depend upon the prosecution of any claim he may have for injury resulting from an accident arising out of and in the course of his employment under the laws of that State. The language of the act thus far considered would not authorize such a construction, but would require a construction that, when the employer and the employee voluntarily agreed that the Georgia act should be operative upon them, the provisions of the act thereby became a material part of their contract, and all injuries to the employee are compensable as provided in the act, and this without regard to the place where the accident occurred, except that it must arise out of and in the course of the employment.

But the employer here relies upon the provisions of the act found in the Code, § 114-411, for support for the contention that the entire provisions of the act are limited as to its extraterritorial operation as stated in that section. It must be observed that the workmen's compensation act provides two methods whereby it shall become operative. By the Code, § 114-110, it is provided, without regard to whether any work has ever been performed within this State, that upon a mere execution of a contract in this State, in the absence of notice by the parties thereto of their rejection of the law, it becomes operative as to the employment embraced in the contract. Then in § 114-201 no mention is made of the execution of a contract, but it is there provided that actual work, in the absence of notice before an accident of a rejection of the law, is all that is required to make the act become operative and charge the parties with having agreed to abide by the act and to pay and receive compensation as the act provides. This section takes no account of the formal execution of an employment contract, or of where the parties were when they executed the contract. It makes no difference whether they were in Georgia or even in the United States. It is sufficient to bring the act into operation as to them if they actually engage in work in this State. By coming into the State and engaging in work the parties thereby submit to its jurisdiction and write into their relationship the provisions of the compensation law obligating them to pay and receive on the basis prescribed by that law for all injuries to employees, no matter in what State sustained, so long as they result from accidents arising

out of and in the course of the employment. On the other hand, under the Code, § 114-110, the State acquires jurisdiction only by the act of the parties in coming within the State to execute the contract of employment. In the absence of the making of a contract within the State, since no work thereunder in the State is required, the parties thereto could not be subjected to the terms of the Georgia law; for to do so would be to deny to them due process of law, as guaranteed by the State and Federal constitutions. Code, §§ 1-815, 2-103. The formal making of a contract within this State could hardly be said in any case to constitute a more substantial submission to the jurisdiction of the State than the actual performance of the terms of such a contract by the parties within the State. The Code, § 114-411, very definitely requires that in cases where there has been no work within this State, a prerequisite to compensation for injury sustained without the State is that the contract of employment must have been made within this State. Without the making of the contract within this State Georgia would have no jurisdiction of the parties. Georgia could not say to an employer residing in another State, who has never been or had a business within the boundaries of this State, and hence has no knowledge of the law of this State, that, because he executes a contract in a foreign State with an employee who resides in this State, he will be subjected to the terms of the statute of this State. Indeed, in such a case the compensation statute could not have become operative, because neither of the two methods provided in the act to bring it into operation, to wit, execution of a contract or actual work within the State, is present. But since under the terms of the law the execution of a contract as provided in the Code, § 114-110, and actual work as provided in § 114-201, serve the identical purpose, each is sufficient within itself to put the statute in operation, and to supply due process and confer jurisdiction.

We think a construction of the Code, § 114-411, which would defeat payment of compensation where the act had become operative in virtue of § 114-201, because the act has not been made operative by a compliance with the terms of § 114-110, would constitute an unjustifiable defeat of the obvious legislative purpose in enacting the law. In view of the general purpose of the act, we believe that it should be so construed that the provisions and terms

which obviously serve the same purpose be substituted wherever necessary, and in this way compliance with the requirement of § 114-201 be construed to be the equivalent of the requirements of § 114-411, and shall have the same effect. The Code, § 114-411, manifestly undertakes to reach out and extend the act to a class of employees that have not already been included. All employees in industries and businesses in this State have already been covered by the act. These employees were the primary concern of the legislature in enacting the law. This section expressly confines its operation to employees "employed elsewhere than in this State." This language simply excludes each and every employee "employed in this State," for "elsewhere than in this State" can never mean "in this State." The terms are irreconcilable, the one positively excludes the other, and hence will in no case include the other. The Code, § 114-411, does not prohibit compensation in different cases. Therefore it should not be employed as a means of or an excuse for withdrawing the benefits thereinbefore conferred. Indeed, to hold that by this section the legislature intended to deprive all employees within the State, who have voluntarily accepted and are subject to the terms of our compensation law, of any of the benefits of that statute in cases where they sustain injury by accident arising out of and in the course of the employment while they are beyond the boundary lines of this State, because of non-compliance with the Code, § 114-411, would be tantamount to holding that the legislature intended thereby to penalize the main employees for whose benefit the law was primarily enacted in order to extend its beneficent provisions to employees who have never engaged in work in this State, and that when there is no need for penalizing the one in order to compensate the other. We think that the provisions of the Code, § 114-411, are clear and free from ambiguity; and it is the rule that where language is clear and unambiguous, no construction is required. *Neal* v. *Moultrie,* 12 *Ga.* 104, 110; *Hopkins* v. *Florida Central &c. R. Co.,* 97 *Ga.* 107, 109 (25 S. E. 452); *Barnes* v. *Carter,* 120 *Ga.* 895, 898 (48 S. E. 387); *Standard Oil Co.* v. *State Revenue Com.,* 179 *Ga.* 371, 375 (176 S. E. 1). As originally enacted (Ga. L. 1920, p. 167) this section was so punctuated as if adhered to would authorize the construction that recovery for compensation could be had for an injury sustained in employment elsewhere than in this State, although no

work had been performed within this State and the contract of employment had been made outside of the State. In such a case the act would not have become operative by either of the methods therein provided, and hence due process would be clearly lacking. However, in order to effectuate the legislative intent and also to render the statute constitutional, punctuation will be disregarded whenever necessary. Black on Interpretation of Laws, 186. Furthermore, had the punctuation of the original act been controlling in its construction, the punctuation having been eliminated in the Code of 1933, such defect in the original act does not reach or infect the law as it appears in the Code. See *Huff* v. *Markham,* 70 *Ga.* 284; *Parks* v. *State,* 110 *Ga.* 760 (36 S. E. 73); *Daniel* v. *State,* 114 *Ga.* 533 (40 S. E. 805); *Barker* v. *State,* 118 *Ga.* 35 (44 S. E. 874); *Kennedy* v. *Meara,* 127 *Ga.* 68 (56 S. E. 243, 9 Ann. Cas. 396); *Maddox* v. *First National Bank,* 191 *Ga.* 106 (11 S. E. 2d, 662).

The question of the Court of Appeals can not be answered by a mere "yes" or "no." As to those employees who have accepted the terms of our statute by the method prescribed in the Code, § 114-201, the provisions of § 114-411 have no application, and the execution of a contract of employment within this State is not necessary to entitle them to receive compensation for injuries sustained outside of the State; but as to employees who have agreed to be bound by the compensation law by the method prescribed in the Code, § 114-110, and who have not engaged in any work within this State, it is essential that the contract of employment be executed within this State, in order that such employees may receive compensation for injuries sustained while employed outside the State. The question is answered "no" as to the first class of employees, and "yes" as to the second class.

*All the Justices concur.*