## 68661. EDWARDS v. STATE OF GEORGIA.
### (325 SE2d 437)

McMURRAY, Chief Judge.

This is a workers' compensation case. The claimant, Queenie Edwards, has been employed since September 1980 as a secretary with the State Department of Labor, Employment Security Agency. On

March 18, 1982, claimant slipped and fell at a nearby fast-food restaurant while she was getting lunch for her office manager. The claimant was unable to work for several weeks (although she received her full salary as sick pay during her convalescence), and she eventually applied for workers' compensation. The administrative law judge and the full Board (with one dissent) awarded the claimant benefits, but the superior court reversed on the basis that the claimant's injury did not arise out of and in the course of her employer's business.

It was undisputed that the claimant regularly obtained lunch for the office manager, and the claimant testified she had considered that task as one of her normal job duties. She contends the task was covered in her formal job description under the catch-all, "other duties as assigned by supervisors and managers." The claimant further maintained that the time period when she usually obtained her manager's lunch did not coincide with her own lunch break. While the office manager acknowledged that the claimant regularly procured his lunch for him so that he could remain working at his desk, he considered this service a personal favor and not one of claimant's assigned job duties; he also believed that the claimant usually obtained his lunch during her own lunch break.

It is, of course, axiomatic that only injuries which arise out of and in the course of employment are compensable under the Workers' Compensation Act. OCGA § 34-9-1 (4). Ordinarily, whether an injury arose out of and in the course of employment is a question of fact and the Board's award, if supported by any evidence, may not be disturbed. *Davidson v. Employers Ins. of Wausau*, 139 Ga. App. 621 (229 SE2d 97) (1976); *Employers Mut. Liability Ins. Co. v. Carlan*, 104 Ga. App. 170 (121 SE2d 316) (1961). We find the case sub judice to fall within the general rule.

The Board determined that the manager could direct the employees to do various other jobs which would facilitate the proper performance of his job duties and it was his decision to remain in the office, continue to work and send the secretary to get lunch. Even though the office manager considered this to be a personal favor to him, the evidence was ample for the Board to determine that at the time she slipped and fell the claimant was not doing anything of a personal nature; and that the claimant was benefiting the employer by obtaining the office manager's lunch and allowing him to continue to work at his desk.

When an employee is injured while in the performance of a task which is of benefit to the employer, he is covered by the Act. *Parker v. Travelers Ins. Co.*, 142 Ga. App. 711, 712 (3) (236 SE2d 915); *Glen Falls Ins. Co. v. Merck*, 117 Ga. App. 163 (159 SE2d 300); *Crowe v. Home Indem. Co.*, 145 Ga. App. 873 (245 SE2d 75); 1A Larson, Workmen's Compensation Law, §§ 27.00, 27.40. Having determined that

the claimant was injured while performing a task from which her employer derived benefit, the Board properly awarded benefits to the claimant.

The employer's reliance upon *U. S. Fidelity & Guaranty Co. v. Skinner*, 188 Ga. 823, 829 (5 SE2d 9) and *American Mut. Liability Ins. Co. v. Lemming*, 187 Ga. 378 (200 SE 141) is misplaced. In these cases, the claimant was not in the scope of his employment and the task which he undertook was of no benefit to the employer.

The award of the full Board was supported by evidence under the "any evidence" rule. Accordingly, the superior court erred in reversing the award of the Board.

*Judgment reversed. Banke, P. J., Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Deen, P. J., Pope and Beasley, JJ., dissent.*

DECIDED NOVEMBER 28, 1984 —
REHEARING DENIED DECEMBER 17, 1984 —

*Robert A. Elsner, Christopher G. Knighton*, for appellant.
*A. Cullen Hammond*, for appellee.

DEEN, Presiding Judge, dissenting.

As noted by the majority, whether an injury arose out of and in the course of employment is usually a question of fact. In some cases, however, the issue presents a mixed question of fact and law. *Utz v. Powell*, 160 Ga. App. 888, 889 (288 SE2d 601) (1982). I consider this case to be within the latter category.

"Under liberal construction the statute [presently OCGA § 34-9-1] includes injury received in doing an act which the injured employee was employed directly to perform or an act incidental thereto, reasonably necessary in performance of the act he was employed to perform. If in performance of an act which he was directly employed to do, *or an act reasonably necessary to be done in order to perform the act he was employed to do*, the employee receives accidental injury, such injury is compensable. If the act does not come within either of these classifications, the injury is not compensable . . . [W]hether an act comes within either classification is a question which involves the terms of the particular contract of employment." *U. S. Fidelity & Guaranty Co. v. Skinner*, 188 Ga. 823, 829 (5 SE2d 9) (1939) (emphasis supplied); see also *American Mut. Liability Ins. Co. v. Lemming*, 187 Ga. 378 (200 SE 141) (1938).

In *Lemming*, where an employee of a corporation was injured (on a lot adjacent to the place of business) while on company time building a turkey pen for the corporation's president at the latter's instruc-

tions, and the corporation's business was unrelated to raising turkeys, the Supreme Court held that under those circumstances, it could not be said "that the injury resulted from an accident arising out of and in the course of the employer's business, notwithstanding the testimony of the president of the company that the directors knew that he was raising turkeys and using mill labor in connection therewith; that the employee was to do anything he instructed him to do; that he had the authority to direct the employee to do anything he saw fit; that the officers and directors called on Lemming to do 'all their jobs,' and that the odd jobs were not separated from his regular job of keeping the mill and houses in repair." Id. at 380. While the majority rule in other jurisdictions appears to allow compensation in cases of this nature, where the employee's act conferred some benefit upon the employer, our Supreme Court has not yet adopted such a liberal view. The Supreme Court cases of *Skinner* and *Lemming* remain valid, binding, and dispositive precedents applicable to this case.

The appellant in this case was directly employed as a secretary, and her specified job duties certainly did not include fetching fast food on "company" time for the office manager's lunch. The only possible justification for finding such a delivery service to be a *de facto* job duty of the appellant as a secretary was the catch-all, i.e., "other duties as assigned," contained in her job description. As the superior court properly concluded, however, that language must be construed as contemplating activities concerning the running of an employment security office and not those of a fast-food delivery service. Under *Skinner* and *Lemming*, it cannot seriously be contended that providing such a food service is reasonably necessary to be done in order to perform those specified secretarial duties for which the appellant was hired.

The majority evidently finds that *Lemming* is distinguishable in that building turkey pens did not benefit the corporation, whereas in the instant case, fetching the office manager's lunch benefited the employer by allowing the manager to continue working at his desk. However, this arguable benefit to the Department of Labor still did not render that task reasonably necessary and incidental to the appellant's regular work. Cf. *Hall v. West Point Pepperell*, 133 Ga. App. 24 (209 SE2d 659) (1974); *Pike v. Maryland Cas. Co.*, 107 Ga. App. 49 (129 SE2d 78) (1962). Moreover, if the Department of Labor's benefit in this case was the office manger's opportunity to remain at his desk and work, surely the corporation in *Lemming* enjoyed a similar benefit in that the corporate president was able to remain at work while a less valuable employee took care of the president's personal business. In this regard, *Lemming* is virtually indistinguishable from the instant case.

Over seventeen years ago, this writer noted that the rule in *Lem-*

*ming* "is itself contrary to the trend in many jurisdictions," *Westbrook v. Hartford Accident &c. Co.*, 116 Ga. App. 37 (156 SE2d 654) (1967), but this court nevertheless followed *Lemming* at that time. Perhaps it should be re-emphasized that the minority (and unpopular) view is not necessarily the incorrect view. Extending the rationale of the majority opinion to its logical conclusion, if a state employee suffered an injury on state time while putting up political campaign posters for his department head, arguably the injury would be compensable because the employer enjoyed a benefit from the employee's political activity. Similarly, should a state employee be injured while working on a department head's boat, or in procuring fishing or hunting equipment for his boss, during regular working hours, under the majority opinion the employee arguably would be entitled to workers' compensation. This unsavory outcome is promoted by the majority opinion, in ignorance of *Lemming*.

In summary, the law in Georgia does not allow workers' compensation in a case of this nature. In *Skinner* and *Lemming*, our Supreme Court adopted what is now the minority rule in other jurisdictions. Nevertheless, that rule remains valid and binding, and the superior court below was correct in its application of that rule. Accordingly, I must respectfully dissent.

BEASLEY, Judge, dissenting.

I concur in the result reached in the dissent but for the following reasons:

The question is whether the injury arose out of and in the course of the employment of the appellant. OCGA § 34-9-1 (4).

Claimant was employed as a secretary/typist with the State Labor Department, Employment Security Agency. Her supervisor regularly asked her to go out for his lunch so he could keep working. Her job description did not expressly make this a duty, but the job description did include a provision that, in addition to her listed duties, she was to "perform other duties as assigned by the office manager."

Assuming that her supervisor was the office manager, the duties which he had authority to ask her to do would have to come within the range of duties reasonably contemplated by the nature of her job as a secretary/typist. There is no evidence that fetching a supervisor's lunch is normally a part of a secretary/typist's duties. Going for her supervisor's lunch involved no secretarial functions and no typist functions, nor was such an activity incidental to either of these categories of work.

The activity did not come within the job description duties expressly. And it certainly did not come within that portion of the job description which required her to perform other duties assigned, be-

cause there is no evidence that her supervisor had authority to assign her to go get his lunch. As a matter of fact, he apparently thought he did not have such authority, as he thought she was getting it on her own lunch hour and he said he did not assign it to her as a job duty. There is no showing that the supervisor was required, as part of his employment responsibilities, to work through the lunch period which the State normally provides to all of its employees. He simply volunteered to forego his lunch period to continue working for their common employer. Without any showing that his employment required it, such activity was a commendable but gratuitous act on the supervisor's part.

This volunteer work of his could not support the assignment to the secretary/typist of the task of getting his lunch. He could not make such an assignment to his secretary/typist unless such assignment was specifically within her job description or reasonably deducible from it or from the catch-all clause which still is bounded by duties related to a secretary/typist job. Had she refused, he could not have compelled her to do it or cite her for insubordination. He could only impose on her good nature to get his lunch as a personal favor.

Thus her acquiescence, prompted as it may have been to keep a good record or please her supervisor or gain favor and a good report from him, did not convert her action into one arising out of her employment, regardless of how pressured she felt to do it. Her employer's business was the administration of the laws regarding labor, as a public agency. Going out for her supervisor's lunch, when there was no showing that the business of the Labor Department Employment Security Agency required it or necessitated it, was simply outside the scope of her duties in this particular job. Whether she did it on her own time or on company time is not controlling.

The application of the law to the undisputed facts leads to the conclusion that the claimant was not performing the duties of a secretary/typist, as defined in the job description and as reasonably within the scope of such a position, at the time of injury. Nor was there any emergency of the employer agency requiring the supervisor to relinquish his lunch period and which might therefore allow him to require her to get his lunch. The test is an objective one, as it must be, and whether the supervisor thought the secretary/typist was doing it on her own time is as inconclusive to coverage as whether the latter thought she was doing it during company time. These are subjective factors and do not establish outright whether or not it was within the scope of her employment for the Labor Department.

In determining what constitutes "the employment," it is the employer who decides its range and scope, not the employees and certainly not the law. It is a question of fact, here focusing on the state agency which employed both the claimant and her supervisor. The

evidence here does not support the finding that this activity was a part of the claimant's employment as defined by her employer.

Whether or not the activity the employee was engaged in at the time of injury benefited the employer is a dangerous test. *Anything* the employee does so as to relieve a co-worker, no matter how personal the business of the aided employee which the helping employee engages in, so long as the relieved employee keeps working on the employer's business, could qualify. Rather it is the nature of the injured employee's work and position, and not the benefit to the employer arising out of the relieved co-employee's work, that should apply.

The superior court reversal of the Board award should be affirmed. I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.