75690. GRAVES v. BUILDERS STEEL SUPPLY et al.
(368 SE2d 188)

McMURRAY, Presiding Judge.

In this workers' compensation case, we are called upon to decide whether claimant's injury arose out of his employment. In making our decision, we apply the holding enunciated in *Pike v. Md. Cas. Co.*, 107 Ga. App. 49 (129 SE2d 78): "If an employee is injured while doing something in the interest of his employer, which is reasonably necessary or incident to his regular work, the injury arises out of his employment. This is true even though the employee has no special permission from the employer to do the particular act and it is beyond the scope of his regular duties." Id. at 51.

Claimant was employed as a grinder by the employer. In that ca-

pacity, claimant used a grinding machine to smooth steel fence parts. One afternoon, after finishing his work, claimant noticed that a belt on a drill press was loose. The drill press had been used by a company employee who was not on the premises at the time. Claimant was not authorized to use the drill press. He was acquainted with it, however, because he used a similar machine in high school.

Claimant tried to replace the belt on the drill press. In the process, it started up and claimant's finger was injured. Subsequently, a portion of claimant's finger was amputated.

Claimant sought a hearing when the employer controverted his claim for benefits. After a consideration of the evidence, the administrative law judge entered an award in favor of the employer. The board (with one member dissenting) reversed. It found that "claimant was injured while performing a task which was in the interest of the employer." Citing *Pike v. Md. Cas. Co.*, 107 Ga. App. 49, supra, it concluded that claimant's injury arose out of his employment. The superior court reversed the award of compensation, concluding that the act of replacing the belt was not reasonably necessary or incident to claimant's regular work.

We granted claimant's application for discretionary review and this appeal followed. *Held*:

Our Workers' Compensation Act is "a humanitarian measure" which should be liberally construed to effectuate its purposes. *Samuel v. Baitcher*, 247 Ga. 71, 73 (274 SE2d 327). Liberally construing the Act, we are led to conclude that claimant sustained a compensable injury.

Claimant operated a grinding machine; he was injured when he attempted to replace a belt on a drill press which had been used by a co-employee. In our view, the gap between claimant's regular work and the repair of the drill press is narrow enough to conclude that the attempted repair was an incident of claimant's regular work. See *Pike v. Md. Cas. Co.*, 107 Ga. App. 49, 51, supra; *Employers Ins. Co. of Ala. v. Wright*, 108 Ga. App. 380, 382 (133 SE2d 39). See also *Houser v. Young*, 25 S2d 421 (Ala. 1946). To hold otherwise is simply unreasonable. "[I]t would be contrary not only to human nature but to the employer's best interests to forbid employees to help each other on pain of losing compensation benefits for any injuries thereby sustained." 1A Larson, Law of Workmen's Compensation, § 27.12.

The evidence was sufficient to support the board's conclusion that claimant's injury arose out of his employment. Claimant was injured while performing an act which benefitted the employer; the act was an incident of claimant's regular work. See *Pike v. Md. Cas. Co.*, 107 Ga. App. 49, 51, supra. It follows that the superior court erred in reversing the award of the board. *Banks v. Royal Globe Ins. Co.*, 160 Ga. App. 18 (286 SE2d 309). See also *Clark v. Ga. Kraft Co.*, 178 Ga.

App. 884, 886 (345 SE2d 61).

*Judgment reversed. Deen, P. J., Carley, Sognier, Pope and Benham, JJ., concur. Deen, P. J., also concurs specially. Birdsong, C. J., Banke, P. J., and Beasley, J., dissent.*

DEEN, Presiding Judge, concurring specially.

While concurring with the majority opinion, I wish to add the following observations. Cases of this type particularly seem to result in splintered opinions, decided upon a case-by-case basis.

In *Parker v. Travelers Ins. Co.*, 142 Ga. App. 711, 712 (236 SE2d 915) (1977), it was held that a truck driver, dockman, and part-time mechanic, who was injured while working during slack periods on personal cars, was entitled to compensation as his injury arose out of his employment. *Parker* is a full panel decision, rarely seen in cases of this nature, and even in it one judge felt compelled to concur specially.

The whole court case of *Edwards v. State*, 173 Ga. App. 87 (325 SE2d 437) (1984) (this writer dissenting), held by a six-to-three vote that a secretary who was regularly procuring lunch away from the office for her manager at a time period not coinciding with her own lunch break and was injured when obtaining a fast food chicken order, was within the scope of her employment at the time of her injury. Extending the rationale of the latter case to its logical conclusion, if a state employee suffers an injury on state time while away from the office shopping for groceries, taking cleaning to the laundry, mowing the lawn, or even baby sitting for the boss (all to enable him to remain at his desk more and to better perform his work), the injury would, arguably, be compensable under the cited cases because the employer enjoyed a benefit from the activity.

In the instant case, the employee was injured on the job site while trying to repair a belt on a drill press of a fellow employee, whereas his particular job assignment was operating a "grinding machine." In considering whether these acts arose out of the scope of employment, it appears that the instant case has more similarities than dissimilarities to *Parker*, where the mechanic was working on personal cars of other employees, and *Edwards*, where the secretary was running throughout the city procuring lunch at different places for her manager.

I acknowledge that we are bound by the holdings in *Edwards* and *Parker*, and note that wider gaps do exist and dissimilarities outweigh similarities in some cases. For example, in a case where the employee was assigned the task of building turkey pens for a corporate president whose hobby was raising turkeys, *American Mut. Liability Ins. Co. v. Lemming*, 187 Ga. 378 (200 SE 141) (1938), and in a case where the employee decided to go eighteen miles farther to Tybee Beach to

get a fresh seafood dinner and see the ocean, rather than eating in Savannah where the company meeting was held, *U. S. Fidelity & Guaranty Co. v. Skinner*, 188 Ga. 823 (5 SE2d 9) (1939), compensation was denied on the basis that the acts did not arise out of and in the course of employment.

I believe that the cases seem to point to the conclusion that these types of situations almost always require a case-by-case analysis, very similar to our approach in slip and fall cases. While sympathizing with the dissent's position, I also believe that the act here arose out of employment, as well as in the course of employment.

BEASLEY, Judge, dissenting.

I respectfully dissent because, as correctly concluded by the ALJ and by the superior court in its well-reasoned judgment, the injury did not "arise out of and in the course of" the employee's employment.

The material facts are not disputed. Graves worked for Builders as a grinder of steel parts used in the manufacture of steel fences. He stated that that was his job. The only machine he was authorized to operate by and for Builders was the grinder. He was not authorized to operate the drill press. Not only that, maintenance was not part of his job.

On the day of his injury, Graves had clocked out and had proceeded on his way out of the work area when he noticed a belt loose on the drill press. He diverted from his path and attempted to replace the belt. He had never done this before. In the process the machine turned on and cut off a portion of his finger. The only acquaintance he had with this type of machine was his use of a drill press while in high school. The only reason he gave for his attention to this machine was that it had been used by a friend, who was not present at the time. Operating the drill press was not part of the friend's job either.

1. Claimant's Enumerations 1 and 2 deal with his contention that the superior court and this court are both bound by the "any evidence" rule to affirm the finding of the board. The superior court's order shows that it was premised on the facts found by the board, which were basically undisputed by the litigants. Where, as here, "the facts in a workmen's compensation case are undisputed, whether the injury arose out of and in the course of employment is a question of law. . . . [Cits.]" *Travelers Ins. Co. v. Smith*, 91 Ga. App. 305, 308 (85 SE2d 484) (1954); *McElreath v. McElreath*, 155 Ga. App. 826, 827 (1) (273 SE2d 205) (1980). The question is whether the court correctly applied the law to the board-found facts.

2. Georgia law provides coverage for those injuries "arising out of and in the course of the employment. . . ." OCGA § 34-9-1 (4). These terms are not synonymous. "In the course of the employment" is ful-

filled when the injury occurs during the period of the employment, at a place where the employee may reasonably be during the performance of his duties, and while the employee is performing those duties or engaged in something incidental thereto. *Murphy v. ARA Svcs.,* 164 Ga. App. 859, 861 (298 SE2d 528) (1982), and cases cited therein.

The requirement that the injury "arise out of the employment" is fulfilled "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment." *Hartford Accident &c. Co. v. Zachery,* 69 Ga. App. 250 (1) (25 SE2d 135) (1943). "The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service." *Employers Ins. Co. of Ala. v. Wright,* 108 Ga. App. 380, 382 (133 SE2d 39) (1963).

In reversing the ALJ, the board held that "[a]lthough claimant was not asked by employer to replace the belt and while claimant did not normally perform maintenance work as part of his work duties, the Board nevertheless finds claimant was performing a job in the interest of the employer and beneficial to the employer. Consequently, the Board finds claimant's injury arose out of and in the course of his employment." The board relied solely on *Pike v. Md. Cas. Co.,* 107 Ga. App. 49 (129 SE2d 78) (1962).

The employee argues that the "course of employment" prong has been met, because an employee has a reasonable time for egress from his immediate place of work during which he remains in the course of his employment. *West Point Pepperell v. McEntire,* 150 Ga. App. 728, 729 (1) (258 SE2d 530) (1979). However, the employee had left his course and purpose of egress to engage in an undertaking on his own and outside of the egress portion of the "course of employment" continuum and zone. He was no longer in a physical *place* for the performance of his own duties or for some engagement incidental thereto, and this did not occur *while* attending to his departure. *Murphy,* supra.

The superior court reversed the board on the ground that "benefit to the employer" is not the only criteria under *Pike,* concluding that the act done by the employee must also be "reasonably necessary or incident to his regular work," that is, arising out of it.

The board's analysis of the case used "benefit to the employer" as the *sole* basis for determining if the injury arose out of the employ-

ment. *Pike* is not that narrow. It involved a district office and sales manager for a company selling houses. The company gave him wide latitude in when and where he worked, and he had authority to hire others to sell for him. Pike had met a soldier at a nightclub for the purpose of discussing his being a "bird dog" for sales prospects. He and Pike would split the commission on any sales so consummated. Driving home, Pike was killed in a wreck in his company car.

"The question is whether the deceased was acting in furtherance of his employer's business — selling houses. Selling includes finding prospects. [Cits.] If an employee is injured while doing something in the interest of his employer, *which is reasonably necessary or incident to his regular work*, the injury arises out of his employment. This is true even though the employee has no special permission from the employer to do the particular act and it is beyond the scope of his specific duties. And it applies especially when the employee has no instruction from the employer prohibiting the act, and when the employee has some discretionary authority. [Cits.] Accordingly, the deceased's recruitment of Lahiff as a 'bird dog' to contact and talk with prospects for the sale of houses could be within the deceased's discretion as reasonably necessary and incident to his regular work; and his death while traveling on the highway incidentally to this activity could be compensable. [Cits.]" *Pike*, supra at 51. (Emphasis supplied.)

Thus, benefit to the employer is insufficient. The task must be reasonably necessary or incident to the regular work of the injured employee. As illustrated by *Pike*, this depends on the nature of the employment, including whether the employee has any discretion in the time, place, and manner of performing his work. While Pike apparently had such discretion, there is no evidence that Graves did. Even if an employee has discretion, that does not bring all he does within this requirement. The act must be one he was directly employed to do or reasonably necessary to be done in order to perform the act he was hired to do. *U. S. Fidelity & Guaranty Co. v. Skinner*, 188 Ga. 823, 829 (5 SE2d 9) (1939).

The decision as to the parameters of an employee's job responsibility is not made solely by the employee. The employer decides the range and scope and must have some authority over the employee's activities. These two elements, job responsibility and employer input, must both be present. On the other hand, an employer and its insurer should not be held liable for gratuitous acts of an employee not reasonably contemplated as arising out of his employment. Otherwise the employee's totally self-determined acts, beyond the parameters of his duties as assigned by the employer who is responsible for workers' compensation benefits, and thus also beyond the contemplated risk, will perforce be covered. Here the act was even outside the duties of

the co-employee he was attempting to help, which claimant knew. Conversely, mere direction by an employer to an employee to do something not connected with the employer's business and the employee's job in it will not suffice. *American Mut. Liability Insurance Co. v. Lemming*, 187 Ga. 378 (200 SE 141) (1938). The employer's no-fault liability is restricted by only one condition on the employee's claim which the law substitutes for the tort liability defenses which the employer surrenders. As Justice Duckworth clearly stated in *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 2 (28 SE2d 280) (1943): "the single and only requirement [is] that the injury resulted from an accident arising out of and in the course of the employment." The employer's liability is limited to those parameters.

In *Hall v. West Point Pepperell*, 133 Ga. App. 24 (209 SE2d 659) (1974), the employee was required to remove boxes of metal bands removed from bales of fiber. A hyster had been parked in front of these boxes. While he was not required to drive the hyster as part of his employment duties, this was deemed reasonably necessary and incidental to his regular work, and his injury while driving the hyster out of the way of the boxes was covered.

Contrary to appellant's position, *Edwards v. State*, 173 Ga. App. 87 (325 SE2d 437) (1984), acknowledges that the task must be within the scope of the injured employee's employment. Id. at 89. That is what was missing from the board's award here and what must be present along with "in the course of employment" before an accident is covered.

*Houser v. Young*, 25 S2d 421 (Ala. 1946) is inapposite because replacing the belt was part of the claimant's job.

The superior court correctly reversed the Workers' Compensation Board's grant of benefits, which were awarded after the ALJ properly denied benefits.

I am authorized to state that Chief Judge Birdsong and Presiding Judge Banke join in this dissent.

DECIDED MARCH 18, 1988 —
REHEARING DENIED APRIL 1, 1988 — ▮▮▮▮▮▮▮▮

*John F. Sweet*, for appellant.
*Robert A. Barnaby, Michael A. Coval*, for appellees.