A93A2275. HADSOCK v. J. H. HARVEY COMPANY, INC.
(442 SE2d 892)

BEASLEY, Presiding Judge.

Hadsock's son, Richie Bethea, was murdered by another employee, Wright, during an armed robbery while making a night deposit at a local bank for their employer, Harvey. Hadsock filed a tort action against Harvey and against the bank, which is not a party to this appeal. Harvey was granted summary judgment on the ground that OCGA § 34-9-11, the exclusivity provision of the Workers' Compensation Act, provided immunity because Bethea's death arose out of and in the course of his employment.

Viewing the evidence in favor of the non-movant plaintiff, *Candler Gen. Hosp. v. Purvis*, 123 Ga. App. 334, 335 (181 SE2d 77) (1971), the record shows that at the time of his death Richie Bethea was a student and part-time employee of Harvey, working as a "stock man" at Harvey's store in Valdosta. The store manager asked him to assist in closing the office "a couple of nights a week," which involved closing down cash registers and preparing the bank deposit. On Wednesdays, Fridays, and Saturdays, Harvey employed a security guard who took the deposit to the bank with one of the managers. On most Thursdays, for a period of two years, Bethea and Madson, a "bag boy," took the deposit to the bank because there was only one manager in the store. There was evidence that Harvey's policy re-

quired that a manager make the deposit and that the manager and assistant manager knew this.

Harvey's policy directed store managers to vary the time and the route taken to the bank "for safety reasons," but Bethea and Madson were not so instructed. They left at the same time each Thursday and did not vary their route. The store manager acknowledged that anyone working in the store could learn when the deposit was being made "if they put their mind to it." The assistant manager reported his suspicions of employee Wright to the store manager, but no action was taken. On Thursday, July 9, 1992, Wright and an accomplice followed Bethea and Madson to the bank, robbed Bethea of the money as he approached the night deposit drawer, and shot him to death.

The undisputed facts show that the employee's death arose out of and in the course of employment. OCGA § 34-9-1 (4). There is remedy, but it is limited to that which is provided through the legislature by the Workers' Compensation Act. OCGA § 34-9-11 (a); *Labelle v. Lister*, 192 Ga. App. 464 (1) (385 SE2d 118) (1989). The issue is whether the injury or death was job-related. When the issue is presented to establish a bar in a tort action, "the normal procedure is for the jury to find facts and then to apply to those facts the law as given by the trial court in its instructions." *Utz v. Powell*, 160 Ga. App. 888, 889 (288 SE2d 601) (1982). However, as pointed out in *Utz*, the issue may be appropriate for resolution by summary judgment.

" 'The words "in the course of the employment" relate to the time, place, and circumstances under which the [incident] takes place, and an [incident] arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' *New Amsterdam Cas. Co. v. Sumrell*, 30 Ga. App. 682, 688 (118 SE 786) [(1923)]." *Gen. Fire &c. Co. v. Bellflower*, 123 Ga. App. 864 (182 SE2d 678) (1971).

There is no question that Bethea's activity was in pursuit of the employer's business.[1] Depositing the employer's receipts for the day was not a personal favor for the supervisor or a personal errand of the employee or any other category of activity which would remove it from the scope of the employment for which he was getting paid.

There is also no question that the two employees were assigned to the task by their supervisor. The fact that it was contrary to company policy for the supervisor to make such an assignment does not take it outside the scope of employment. The employees were in no

---

[1] The writer of this opinion dissented in *Edwards v. State of Ga.*, 173 Ga. App. 87, 91 (325 SE2d 437) (1984), because the secretary/typist's going out to get her supervisor's lunch constituted a personal favor and not the performance of a job duty.

position to challenge it or even to know of the policy. They were engaged in an activity in the interest of the employer, not in a gratuitous act which is outside the range and scope of the job responsibilities assigned.[2] This is not a case where the employee disregarded instructions or took upon himself an unauthorized activity, but rather a case where the employee followed the instructions given to him to complete a task which was part of the employer's business operations.

The Workers' Compensation Act is to be liberally construed in determining whether an injury is compensable under it. *Graves v. Builders Steel Supply*, 186 Ga. App. 736, 737 (368 SE2d 188) (1988), citing the Supreme Court case of *Samuel v. Baitcher*, 247 Ga. 71, 73 (274 SE2d 327) (1981). It must be viewed in this manner both when an employee has made a claim and is seeking coverage under it and when an employer has sought its protection as a defense to a tort action. One of the purposes of the Act is surely the humanitarian one of providing relief to injured employees, but another purpose is to protect employers against excessive recoveries of damages. *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 3 (28 SE2d 280) (1943); *Samuel v. Baitcher*, supra. We are to interpret the Act, if its language will permit, so as not to deny its benefits to either employee or employer. *Slaten*, supra. If the damages in this case or in death cases generally are inadequate, it is the legislature which must effectuate a change, not the court by way of excluding such cases from workers' compensation coverage.

In this case, there was a causal connection between the employment and the injury. See *Borden Foods Co. v. Dorsey*, 112 Ga. App. 838 (3) (146 SE2d 532) (1965). There was no personal deviation which broke the link with employment. See *Chandler v. Gen. Accident Fire &c. Corp.*, 101 Ga. App. 597 (114 SE2d 438) (1960). The employee was killed while in the performance of a task which was of benefit to the employer. *Edwards v. State of Ga.*, 173 Ga. App. 87, 88 (325 SE2d 437) (1984) and citations therein.

The employer's negligence vel non, or even gross negligence, is not in issue. As Justice Duckworth clearly stated in *Slaten*, supra at 2: "the single and only requirement [for the no-fault workers' compensation coverage is] that the injury resulted from an accident arising out of and in the course of the employment." The existence of that condition precludes the appellant's tort action, and we cannot narrow the coverage of workers' compensation in order to preserve this tort action.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Andrews, John-*

---

[2] This distinction caused the writer of this opinion to dissent in *Graves v. Builders Steel Supply*, 186 Ga. App. 736, 739 (368 SE2d 188).(1988).

*son and Blackburn, JJ., concur. McMurray, P. J., Cooper and Smith, JJ., dissent.*

SMITH, Judge, dissenting.

I respectfully dissent. "It is well settled that when an injury arises out of and in the course of employment, the employee's sole remedy is against the employer, pursuant to OCGA § 34-9-11." *Labelle v. Lister*, 192 Ga. App. 464 (1) (385 SE2d 118) (1989). Whether an employee's injury arose out of and in the course of employment is usually a question of fact. *Edwards v. State of Ga.*, 173 Ga. App. 87, 88 (325 SE2d 437) (1984). "The terms 'arising out of' and 'in the course of' are not synonymous. An injury arises 'in the course of employment' when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto." (Citations and punctuation omitted.) *Murphy v. ARA Svcs.*, 164 Ga. App. 859, 861 (298 SE2d 528) (1982). Another guide to determining the scope of employment is whether the employee "was performing acts within the class of service for which he was employed." *Redwing Carriers v. Knight*, 143 Ga. App. 668, 669 (1) (239 SE2d 686) (1977). Here, in contrast, testimony on the record indicates that carrying a deposit to the bank was a managerial duty and should not have been performed by a "stock man" and "bag boy."

Moreover, " '[i]t is entirely true that the employer may define the limits of the employee's sphere of employment by prohibitions, rules, and regulations, and if the employee violates these he is outside the scope of his employment, and any injury sustained outside the scope of the employment is not compensable.' " *Parker v. Travelers Ins. Co.*, 142 Ga. App. 711, 713 (4) (236 SE2d 915) (1977). In *Parker*, a mechanic was authorized by his employer to perform work on his and co-employees' cars in "lull or slack periods" during which he was required to remain on the employer's premises. In contrast, Harvey's regional management had published specific guidelines, and the local store manager and assistant manager acknowledged that they understood the guidelines provided that a manager rather than an hourly employee perform the task in question.

The fact that a local manager directed Bethea to make the night deposit does not in itself demand summary judgment for Harvey as a matter of law. *American Mut. Liability Ins. Co. v. Lemming*, 187 Ga. 378 (200 SE 141) (1938). "[M]ere direction by an employer to an employee to do something not connected with the employer's business and the employee's job in it will not suffice [to support a finding that the employee is within the scope of his employment]. [Cit.]" *Graves v. Builders Steel Supply*, 186 Ga. App. 736, 742 (368 SE2d 188)

(1988) (Beasley, J., dissenting).

This court's decisions in *Edwards*, supra, and *Graves v. Builders Steel Supply*, supra, do not require a different result. Ordinarily, this court reviews an award and findings of fact by the State Board of Workers' Compensation, and will not disturb that award if it is supported by any evidence. *Edwards*, supra at 88. In both *Edwards* and *Graves* there was evidence to support the conclusion that the work was within the scope of employment.

In *Edwards*, the claimant was injured in a fast-food restaurant while obtaining a carry-out lunch for her supervisor so that he could continue to work. Edward's written job description contained a provision including " 'other duties as assigned by supervisors and managers,' " 173 Ga. App. at 88, and she testified that getting her supervisor's lunch fell within that general provision in her written job description and was one of her regular duties. Id. In *Graves*, this court noted that it liberally construes the Workers' Compensation Act to effectuate its humanitarian purposes. 186 Ga. App. at 737. A machine operator who was injured on a fellow employee's machine, on which he was not authorized to work, was held to be engaged in work so similar to his own that the activity was "an incident of claimant's regular work." Id. In neither *Graves* nor *Edwards* was there testimony that the conduct in question was explicitly placed outside the scope of the worker's employment by written company policy.

On summary judgment in a tort action, the standard applied is different from that used in reviewing a decision of the Board of Workers' Compensation. "The party moving for summary judgment has the burden of establishing the non-existence of any genuine issue of fact, and all doubts must be resolved in favor of the non-moving party." *Northside Bldg. Supply Co. v. Foures*, 201 Ga. App. 259 (411 SE2d 87) (1991).

Construed most strongly against the movant, the record contains evidence that Harvey knew the night deposit involved a risk of armed robbery to the person performing the task. Consequently, Harvey directed that managers make bank deposits and provided explicit written directions as to the manner in which this task should be performed. The record supports the inference that a manager was present and available to make the deposit on the night of Bethea's death but failed to perform his assigned duties. Instead, two unauthorized employees were diverted from their regular duties to make the deposit in the manager's stead, contrary to written company policy and without being instructed in the proper manner of performing that duty. There is some evidence that management chose this course of action only when a security guard was not available to carry the night deposit.

These facts present an apparent conflict between the employer's

rules and the command of an intermediate supervisor in contravention of those rules, creating an issue of fact as to whether Bethea's death arose out of and in the course of his employment. Bethea's knowledge of regional management's policy and the authority of local management to countermand that policy remain in dispute. A finder of fact could conclude that making the night deposit was outside the scope of Bethea's duties and not an incident of his regular work, and that he was performing acts outside the class of service for which he was employed. For these reasons, summary judgment is inappropriate here, and I would reverse the trial court's grant of summary judgment to Harvey.

I am authorized to state that Presiding Judge McMurray and Judge Cooper join in this dissent.

DECIDED MARCH 18, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 — ▮▮▮▮▮▮▮

*J. Converse Bright*, for appellant.
*Young, Clyatt, Turner, Thagard & Hoffman, Robert M. Clyatt, Daniel C. Hoffman, Hodges, Erwin, Hedrick & Kraselsky, Kenneth B. Hodges, Jr.*, for appellee.