A96A0992. ENGLAND v. BEERS CONSTRUCTION COMPANY.
A96A0993. SOUTHERN REGIONAL MEDICAL CENTER, INC.
v. ENGLAND.
(479 SE2d 420)

JOHNSON, Judge.

Danny Dwight England was severely injured while working on a construction site. Through his guardian, he filed a single lawsuit against both the prime contractor, Beers Construction Company, and the owner of the premises, Southern Regional Medical Center. In Case No. A96A0992, England appeals from the grant of summary judgment to Beers. In Case No. A96A0993, Southern Regional appeals from the denial of its summary judgment motion. We affirm both rulings.

In 1974, Southern Regional hired Beers to work on Southern Regional's property. As part of that work, Beers installed a metal

grate over an air shaft approximately 20 feet deep.

In 1992, Southern Regional again hired Beers, this time to work on its emergency room. This construction project involved work in an area adjacent to the air shaft. Beers subcontracted some of the work to Breman Steel, Inc., who in turn subcontracted with Park Place Steel, Inc., England's employer. While performing his work on the project on the occasion of his injury, England was standing on a ladder placed on top of the grate covering the air shaft when the grate gave way, causing him to fall. England landed on his head at the bottom of the air shaft. He suffered severe brain injury and has existed in a persistent vegetative state since his fall. His family received workers' compensation benefits from Park Place or its insurer. In this action, England alleges that Beers negligently installed the grate in 1974; that Southern Regional negligently accepted the grate from Beers in 1974; and that Southern Regional negligently maintained the grate from 1974 to 1992.

## Case No. A96A0992

1. In the trial court, Beers successfully argued that it was entitled to tort immunity as England's "statutory employer" under the Workers' Compensation Act, OCGA § 34-9-1 et seq. This argument was based on two sections of the Act: OCGA § 34-9-11 (a), stating that the Act provides the exclusive remedy for injured employees; and OCGA § 34-9-8 (a), which states: "A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." In *Yoho v. Ringier of America*, 263 Ga. 338, 341 (434 SE2d 57) (1993), our Supreme Court held: "Only an entity who is secondarily liable for workers' compensation benefits under OCGA § 34-9-8 (a) is consequently entitled to tort immunity under OCGA § 34-9-11."

England contends that, for several reasons, Beers was not secondarily liable for his workers' compensation benefits, and that the trial court therefore erred in granting Beers "statutory employer" tort immunity.

(a) England first maintains that the "his subcontractors" language of OCGA § 34-9-8 (a) makes Beers potentially liable for workers' compensation payments to employees of only those subcontractors with whom Beers was in contractual privity. Because Beers was only in contractual privity with Breman Steel, not his employer, Park Place, England maintains that Park Place was not Beers' subcontractor under this statute.

In *Landrum v. Cobb County Concrete Products*, 191 Ga. App. 805

(383 SE2d 144) (1989), a contractor two levels "up the ladder," not in contractual privity with the deceased worker's immediate employer, was held to be the worker's statutory employer. "[T]he statute [OCGA § 34-9-8] embraces all who are in the venture with the hope of making a profit out of the *doing* of the work as distinguished from one out of the use or disposition of the completed project." (Citation and punctuation omitted, emphasis in original.) *Yoho,* supra at 342. Because Beers was "in the venture with the hope of making a profit out of the doing of the work," § 34-9-8 imposed upon Beers secondary workers' compensation liability for employees of its subcontractors and sub-subcontractors. Beers therefore received tort immunity as the "statutory employer" of all such employees, including England.

(b) England next claims that, even if Beers received immunity under the Act, Beers divested itself of this immunity by contracting away to Breman any potential workers' compensation liability to Park Place employees. It is true that Beers' contract with Breman required Breman to provide workers' compensation insurance. This contract between private parties could not, however, negate Beers' statutory obligations or rights as to third parties. "The fact that the statutory employer has a right to indemnification [of workers' compensation liability], statutory or contractual, does not strip him of his tort immunity." *Wright Assoc. v. Rieder,* 247 Ga. 496, 500 (1) (277 SE2d 41) (1981).

(c) England also claims that Beers' contract with Southern Regional assigned all Beers' subcontracting rights and obligations to Southern Regional; and that Beers therefore contracted away to Southern Regional both any potential workers' compensation obligations to any subcontractors' employees, and the accompanying tort immunity. Just as Beers could not contract away to Breman its statutory rights and obligations, however, it could not contract them away to Southern Regional. *Rieder,* supra at 499-500.

(d) Finally, England argues that even if Beers is entitled to "statutory employer" immunity for any torts it might have committed during England's 1992 employment, such immunity does not extend to Beers' alleged negligence in the 1974 grate installation, an entirely separate project upon which England did not work.

The Workers' Compensation Act, however, focuses not on the defendant's conduct in causing the injury, but on the plaintiff's circumstances in sustaining it. The tort immunity statute, OCGA § 34-9-11 (a), provides that recovery of workers' compensation benefits "shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death. . . ." While "such injury" has no grammatical antecedent, the definitions section of the Act provides that "injury" shall mean

"injury . . . arising out of and in the course of the employment. . . ." OCGA § 34-9-1 (4). In construing this language, we are bound by OCGA § 34-9-23: "This chapter shall be liberally construed only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both. This chapter is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment as defined by this chapter. The provisions of this chapter shall be construed and applied impartially to both employers and employees."

Because England was performing his employer's business and not his own when he was injured, his injury arose out of and in the course of his employment, which means that it falls within the scope of the Workers' Compensation Act for purposes of benefits eligibility as well as tort immunity. See *Hadsock v. J. H. Harvey Co.*, 212 Ga. App. 782, 784 (442 SE2d 892) (1994). The grant of summary judgment to Beers was therefore correct.

### Case No. A96A0993

For the reasons set out below, we conclude that the trial court also correctly denied Southern Regional's motion for summary judgment.

2. Southern Regional contends that, because it had surrendered control of the premises to Beers, it was relieved of a property owner's usual duty to use ordinary care to keep the premises safe for invitees. See OCGA § 51-3-1. This proposition is based in OCGA §§ 51-2-4 and 51-2-5 (5), which provide that an employer — for instance, a property owner hiring a builder — is not responsible for torts of its independent contractor unless the employer retains control over the contractor's work.[1] In support of its argument, Southern Regional cites several cases applying this rule. See, e.g., *Englehart v. OKI America*, 209 Ga. App. 151, 151-153 (1) (433 SE2d 331) (1993).

Southern Regional's reliance on this "control" line of cases is misplaced, because England is not suing Southern Regional for an alleged tort of its contractor, Beers. Rather, England sues for Southern Regional's own alleged negligence in accepting and maintaining the grate. OCGA §§ 51-2-4 and 51-2-5 limit an employer's vicarious liability only, and do not apply to a claim arising from the employer's own conduct. "[T]he employer of an independent contractor owes the

---

[1] There are other situations, not relevant to the case before us, in which an employer may be liable for his contractor's torts. See OCGA § 51-2-5 (1)-(4), (6). See also *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 91-94 (1), (2) (327 SE2d 188) (1985).

contractor's employees the ubiquitous duty of not imperiling their lives by his own affirmative acts of negligence." (Citations omitted.) *United States v. Aretz*, 248 Ga. 19, 24 (B) (1) (280 SE2d 345) (1981). Any control Beers may have exercised over the premises in 1992 therefore did not entitle Southern Regional to summary judgment on England's claim that Southern Regional was itself negligent.

3. Southern Regional maintains that even if it owed a duty to England, any claim for breach of that duty is barred by the statute of repose, OCGA § 9-3-51. This statute bars most claims for deficient construction of improvements to real property brought more than eight years after substantial completion of the construction, against one "performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement." However, even if Southern Regional could show that it "performed or furnished" one of these services in the 1974 construction — which it has not shown — the statute of repose would still have no application to England's claim that Southern Regional negligently maintained the grate from 1974 to 1992. The statute of repose therefore does not require summary judgment for Southern Regional.

4. An owner of land is required to use ordinary care in inspecting the premises for defects that might be dangerous to invitees, see *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 294 (322 SE2d 737) (1984), and is presumed to know of a defect in the premises if it was discoverable through a reasonable inspection. See *Oliver v. Complements, Ltd.*, 190 Ga. App. 30, 31 (378 SE2d 154) (1989); see generally OCGA § 51-3-1. Because this case presents jury issues as to whether the defect in the grate could have been discovered in a reasonable inspection, and as to whether Southern Regional performed a reasonable inspection, the trial court was correct to deny summary judgment to Southern Regional. See *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432) (1991).

*Judgments affirmed. Ruffin, J., concurs. McMurray, P. J., concurs in judgment only in Case No. A96A0992 and concurs fully in Case No. A96A0993.*

DECIDED DECEMBER 2, 1996 —
RECONSIDERATION DENIED DECEMBER 17, 1996 — 

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Charles B. Tanksley*, for England.

*Alston & Bird, Gerald L. Mize, Jr., Biederman & Milling, R. Clay Milling II*, for Beers Construction Company and Southern Regional Medical Center.