**TRIGON HOLDINGS, INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GRIF-FITH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 2013.

Decided Aug. 7, 2013.

Robert P. Walter, Pittsburgh, for petitioner.

Julie Wieczorek Fritsch, Pittsburgh, for respondent Kenneth Griffith.

BEFORE: COHN JUBELIRER, Judge, BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Trigon Holdings, Inc. (Employer) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) January 18, 2013 order affirming the Workers' Compensation Judge's (WCJ) grant of Kenneth Griffith's (Claimant) claim petition. The issues for this Court's review are: (1) whether the Board erred by affirming the WCJ's determination that Claimant was in the course and scope of his employment at the time of his injury, and (2) whether the WCJ issued a reasoned decision. We reverse.

Employer's business involves exclusively the finishing of medical or aerospace industry parts. Claimant worked full-time for Employer as a gang leader for approximately 7½ years. Claimant's job was to make sure that Employer's machines were operating properly during his shift. Finding of Fact (FOF) No. 5b. Claimant was required to examine the equipment and troubleshoot or get tooling for the machine operators when necessary. FOF No. 5b. He was not a machine operator. FOF No. 5b.

On May 30, 2008, approximately two hours into the midnight shift and after ensuring that Employer's machines were running smoothly, Claimant told employees in the machine shop he would be in the tool and die room for "a couple of minutes"

if they needed him.[1] FOF No. 5d. Within roughly 5 minutes, while polishing a bolt for his child's go-cart with an emery cloth, Claimant's left thumb was drawn into a lathe, resulting in the skin and tissue being removed down to the bone. FOF No. 5f; Reproduced Record (R.R.) at 50a. He was taken to the emergency room and thereafter underwent procedures to rebuild and rehabilitate his thumb. FOF Nos. 5g, 5h. He was unable to perform his time-of-injury job until he was released to work on December 1, 2008. FOF Nos. 3, 10. Employer suspended Claimant for 5 days for performing personal work on company time with company equipment. Notes of Testimony, October 1, 2008, Ex. Employer A; R.R. at 39a, 41a.

On August 28, 2008, Claimant filed a claim petition seeking workers' compensation benefits on the basis that his left thumb was "degloved" in the course of his employment. R.R. at 4a. Employer denied Claimant's averments. Hearings were held before a WCJ on October 1 and November 14, 2008, January 8, April 7, August 25 and October 22, 2009. On March 31, 2010, the WCJ granted the claim petition, awarding Claimant total disability benefits from May 30, 2008 to December 1, 2008, plus interest. The WCJ also awarded litigation costs, attorney's fees, and reimbursement of subrogation liens for medical expenses. Employer appealed, arguing that there was no competent evidence to support the WCJ's finding that Claimant's injury occurred in the course and scope of his employment. On January 18, 2013, the Board affirmed the

WCJ's decision. Employer appealed from the Board's order to this Court.[2]

Employer argues that the Board erred by affirming the WCJ's finding that Claimant's injury occurred in the course and scope of his employment when, "without [Employer's] knowledge or consent," he left his appointed duties and performed unauthorized work of a personal nature. Employer Br. at 12.

Section 301(c)(1) of the Workers' Compensation Act (Act),[3] provides that, in order to be compensable under the Act, an injury must have occurred within the course of the Claimant's employment, and must be causally related thereto. *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635 (Pa.Cmwlth.2000).

An injury may be sustained 'in the course of employment' under Section 301(c)(1) of the Act in **two distinct situations:** (1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; **or** (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, **and** (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Id.* at 640 (emphasis added). This Court has held:

---

1. Employer's tool and dye department was located 20 to 25 yards from the machine shop through an open garage door.

2. "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether

constitutional rights were violated." *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 744 n. 1 (Pa.Cmwlth.2010).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

The operative phrase 'actually engaged in the furtherance of the business or affairs of the employer,' which is usually expressed as 'in the course of employment,' must be given a liberal construction.... **[D]etermining whether an employee is acting in the course of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ.**

*Lewis v. Workers' Comp. Appeal Bd. (Andy Frain Servs., Inc.)*, 29 A.3d 851, 862 (Pa.Cmwlth.2011) (citation omitted; emphasis added). Moreover, the Pennsylvania Superior Court declared:

> An employe is entitled to compensation for every injury received on the premises of his employer during the hours of employment, regardless of whether he is actually required to be at the particular place where the injury occurred, **so long as there is nothing to show that he had abandoned the course of his employment or was engaged in something wholly foreign thereto.**

*Henry v. Lit Bros.*, 193 Pa.Super. 543, 165 A.2d 406, 409 (1960) (emphasis added).

Here, the WCJ found that Claimant "had a couple of minutes to spare[,] so he went back to the tool and die department to polish a bolt for his child's go-cart...." R.R. at 12a. Thus, Claimant's injury occurred after he made a decision to leave his work responsibilities and while he was performing a personal task unrelated to his job duties while using a dangerous piece of equipment on Employer's premises during work hours. In order to be compensable, Claimant's activity at the time of his injury had to be either "in furtherance of" Employer's business or affairs, **or** "caused by" the operation of Employer's business or affairs.[4] *U.S. Airways*, 764 A.2d at 640. Based upon the following evidence, the WCJ concluded that Claimant's injury occurred during "a small temporary departure from work [that did] not break the course of employment." R.R. at 19a.

At the October 1, 2008 hearing, Claimant testified that his job duties sometimes required that he use machines in the tool and die room to hone improperly-tooled parts and make them usable. FOF No. 5b; R.R. at 45a, 49a–50a. He also stated that, prior to the day of his accident, his foreman Michael Findle made clear that he could go to the tool and die department any time to do personal work. FOF No. 5c. On the day of his accident, Claimant did not inform his supervisors or anyone else in a supervisory capacity that he was leaving his assigned work area. FOF No. 5k. Claimant maintained that it was general knowledge that employees performed personal tasks while working for Employer. Claimant specifically recalled seeing other employees making vehicle axles, sharpening lawn mower blades, and sandblasting various non-work-related objects at work. FOF Nos. 5e, 5l. He contended that there were times that supervisors would ask employees to do personal jobs for them. Claimant's witnesses also testified that Employer permitted them to use the tool and die equipment for their own personal projects.[5]

---

4. Because Claimant was required to be and was, in fact, on Employer's premises at the time his injury occurred, we need only determine whether his activity at the time of his injury was either in furtherance of Employer's business or by operation of Employer's business.

5. Employer maintains that these witness accounts are unreliable because one person who was observed performing personal work on the tool and die machines left Employer 4 or 5 years ago, and another left Employer 10 years ago.

David Tenison (Tenison), Employer's Senior Vice President and General Manager, has worked for Employer since 1999. FOF No. 9a. He testified that he issued Claimant's June 17, 2008 grievance suspension letter on the basis that: "He was not performing assigned work when this incident occurred. He was performing personal work on company equipment on company time during his shift.... This kind of activity is unacceptable." Notes of Testimony, January 8, 2009, Emp. Ex. A. Tenison claimed that, other than the testimony he heard at the WCJ hearings, he was unaware of any instance in which an employee did personal work on Employer's equipment on Employer's time. FOF No. 9e.

▮ It is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n. 8 (Pa.Cmwlth.2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness...." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa.Cmwlth.2000). Here, based upon this record evidence, the WCJ deemed Claimant's testimony and that of his witnesses to be more credible than Tenison's testimony. The WCJ specifically found:

> I do not believe that [Tenison] intended to be untruthful, but I note that he did not work for [E]mployer as long as some of [Claimant's] witnesses ... and I believe that he may not have been aware of some of the practices which occurred at the plant. I believe the testimony of [C]laimant and his witnesses establishes a long[-]standing practice of allowing employees to perform personal tasks if they do not interfere with their regular job duties. I note that [E]mployer did

not offer testimony to refute [C]laimant's testimony that his supervisor had specifically told him that he could perform personal tasks when he needed to. I therefore specifically accept this portion of [C]laimant's testimony as credible.

R.R. at 18a–19a. Accordingly, the WCJ concluded:

> Claimant has met his burden of proving that he sustained an injury ... while he was in the course and scope of his employment for [E]mployer on May 30, 2008.... I have reviewed the case law cited by [C]laimant and I believe it supports [C]laimant's argument that **a small temporary departure from work does not break the course of employment[,] and that an incident necessary to constitute a break in the course of employment must be of a pronounced character.**

R.R. at 19a (emphasis added). However, whether an employee is acting within the course and scope of his employment is a legal determination. *Lewis.*

▮ We acknowledge that " 'course of employment' embraces intervals of leisure within regular hours of the working day and ... momentary departures from the work routine do not remove an employee from the course of his employment." *U.S. Airways*, 764 A.2d at 642 (quoting *Cozza v. Workmen's Comp. Appeal Bd.*, 34 Pa. Cmwlth. 605, 383 A.2d 1324, 1325 (1978)). However, this Court has recognized that "[i]n answering whether a departure from work is lengthy or temporary, monumental or minor[,] ... there is no fixed standard by which to make such a determination." *Penn State Univ. v. Workers' Comp. Appeal Bd. (Smith)*, 15 A.3d 949, 953 (Pa. Cmwlth.2011). As a result, the case law in this area appears to have made a clear and consistent application of the law difficult and, consequently, the standard has be-

come somewhat strained. *See The Baby's Room v. Workers' Comp. Appeal Bd. (Stairs)*, 860 A.2d 200 (Pa.Cmwlth.2004) (wherein the claimant was deemed in the course of his employment and entitled to compensation for a traumatic brain injury that occurred when, as he completed a residential furniture delivery and was returning to his truck, he jumped to touch a basketball rim in the driveway and fell backwards hitting his head); *see also City of New Castle v. Workmen's Comp. Appeal Bd. (Sallie)*, 118 Pa.Cmwlth. 51, 546 A.2d 132 (1988) (wherein the claimant was deemed in the course of employment and entitled to compensation for his death from a rare, non-occupational disease he contracted when he kissed a co-worker who was leaving for maternity leave). *But see Wright v. Workers' Comp. Appeal Bd. (Larpat Muffler, Inc.)*, 871 A.2d 281 (Pa.Cmwlth.2005) (wherein claimant was deemed not in the course of his employment and not entitled to compensation for injuries he sustained after being struck by a car when, during work hours, he crossed a street to a parking area deemed a part of employer's premises, to retrieve personal auto parts he ordered at a discount from one of employer's distributors which he intended to exchange).

In this case, based upon specific findings that Claimant "intended to be in the tool and die department for 5 minutes," and that Claimant told his co-workers that he "would be back in a couple of minutes," then he went to the tool and die room located 20 to 25 yards away, the WCJ concluded that Claimant's "small temporary departure from work" did not break the course of his employment. FOF No. 5 d; R.R. at 19 a. We disagree.

"Temporary" is defined as "lasting for a limited time." *Merriam–Webster's Collegiate Dictionary* 1286 (11th ed. 2004). "Departure" is defined as "a setting out (as on a new course)[;] ... DIVERGENCE...." *Id.* at 334. Although it is clear that Claimant temporarily diverged from his work responsibilities, and that such activity may not break the course of employment, *U.S. Airways*, we are hard-pressed to make the legal conclusion that such departure was also small and not pronounced. "Small" is defined as "**minor in influence**[;] .... operating on a limited scale[;] ... little or **close to zero in** an objectively measurable aspect (as quantity, amount, or **value**)[;] ... **of little consequence: TRIVIAL, INSIGNIFICANT....**" *Merriam–Webster's Collegiate Dictionary* 1176 (emphasis added). "Pronounced" is defined as "**strongly marked.**" *Id.* at 995 (emphasis added).

Here, whether or not Employer may have permitted Claimant to conduct personal work on its machinery during his work hours, and regardless of whether he was gone from the machine shop for only 5 minutes when he sustained his injury,[6] his departure from the course of his employment was strongly marked and not trivial, insignificant or minor in influence. Claimant was not injured attending to his personal comfort, i.e., getting a drink of water or using the restroom, so that he could continue to serve Employer's interests. Rather, the accident occurred after Claimant actively disengaged himself from his work responsibilities. According to the WCJ's findings, Claimant left the machine shop to polish the bolt **after** he made sure Employer's machines were operating properly. FOF No. 5d. Claimant also felt

---

**6.** Although the WCJ made no specific finding or credibility determination related to how long Claimant's departure from his work duties was on May 30, 2008, Claimant's testimony that his injury occurred within approximately 5 minutes of polishing the bolt on his son's go-cart was not challenged.

compelled to inform his co-workers he was leaving, so they could find him if he had to troubleshoot for them. These findings illustrate the pronounced and significant nature of Claimant's divergence. Thus, the evidence supports the legal conclusion that Claimant's injury while polishing a bolt for his child's go-cart was a pronounced departure from his work responsibilities and, therefore, it did not occur in the course of his employment.

The Pennsylvania Supreme Court has "recognize[d] that the [Act] is remedial in nature and is intended to benefit workers, and thus its provisions must be construed to effectuate their humanitarian objective." *Kmart Corp. v. Workers' Comp. Appeal Bd. (Fitzsimmons)*, 561 Pa. 111, 119, 748 A.2d 660, 664 (2000). The Supreme Court cautioned, however, that "[t]here are certain limitations beyond which it was not the intention of the legislature to extend responsibility of an employer for injuries sustained by an employee. The [A]ct was never intended to make the employer an insurer of the safety of all employees." *Ginther v. J.P. Graham Transfer Co.*, 348 Pa. 60, 63, 33 A.2d 923, 924 (1943).

Under these circumstances, we hold at the moment of his May 30, 2008 injury, Claimant had abandoned his work responsibilities and was deliberately engaged in an activity wholly foreign thereto, i.e., polishing a bolt for his child's go-cart. *Henry*. Accordingly, the Board erred by affirming the WCJ's determination.

 Employer also contends that the WCJ's decision was not "reasoned" as re-

quired by Section 422(a) of Act, 77 P.S. § 834, insofar as there was no competent evidence to support the WCJ's finding that Employer allowed employees to perform personal tasks at work to the extent such tasks did not interfere with their regular job duties. However, Employer did not raise this issue before the Board. Employer's appeal alleged only that the WCJ's Findings of Fact Nos. 5–12, 15, 17 and 18, and Conclusion of Law No. 1 were in error and were not supported by substantial evidence. Pennsylvania Rule of Appellate Procedure 1551(a) states in pertinent part: "Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit...." Pa.R.A.P. 1551(a). Because Employer failed to raise this issue before the Board, it is waived and cannot now be decided by this Court.[7]

Based on the foregoing, the Board's order is reversed.

### ORDER

AND NOW, this 7th day of August, 2013, the Workers' Compensation Appeal Board's January 18, 2013 order is reversed.

---

7. Had Employer properly raised its reasoned decision issue, we nevertheless would have deemed it meritless. Section 422(a) of the Act requires that a WCJ's decision must contain "findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can

determine why and how a particular result was reached." 77 P.S. § 834. Because the WCJ here clearly and concisely stated the reasons for his determination, and the Board and this Court are able to determine why and how he reached the result he did, the WCJ issued a reasoned decision.