IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Grill,                                   :
                    Petitioner              :
                                               :    No. 1490 C.D. 2015
            v.                                 :
                                               :    Submitted:  January 29, 2016
Workers' Compensation  Appeal        :
Board (U.S. Airways),                   :
                    Respondent          :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED:  September 21, 2016


            Scott Grill (Claimant) petitions for review of the August 18, 2015 order
of the Workers' Compensation Appeal Board (Board), which affirmed the decision of
a Workers' Compensation Judge (WCJ) denying Claimant's claim petition.   We
reverse.


**Background**

            On December 28, 2012, Claimant filed a claim petition against U.S.
Airways, Inc. (Employer), alleging that on December 16, 2012, he suffered fractures
in his fourth and fifth metacarpals while in the course and scope of his employment
as a Catering Agent for Employer.   On January 10, 2013, Employer filed an answer
denying the material allegations.   Thereafter, the parties submitted Claimant's

deposition and medical reports to the WCJ. (Supplemental Reproduced Record (S.R.R.) at 19b.)

In his deposition, Claimant testified that as a Catering Agent for Employer, his duties included filling catering carts for departing aircraft. Claimant said that he would refill one foot by one foot by twenty-inch metal boxes with beverages and other similar items, which were then placed in a movable rack to be used by flight attendants to serve customers during international flights. (Reproduced Record (R.R.) at 4a-7a.)

Claimant testified that his co-worker and friend, Bill Geyer, a Warehouse Agent, complained to him in early December 2012 that the locker used by Employer in the warehouse was falling apart. Claimant subsequently volunteered unused lockers which he had at his residence to replace Employer's deteriorating locker. Claimant testified that Employer's locker was used to store Employer's brooms, chains, cleaning materials, and equipment for loading and unloading trucks. The lockers Claimant had at home were obtained from a friend and Claimant intended to use them for storage. (R.R. at 8a-9a.)

Claimant further testified that on December 16, 2012, he transported the lockers with his personal truck from home to work. Claimant clocked in at work, proceeded to get paperwork for his assignments, and went to the warehouse, which was on the same level as his workplace in the loading dock warehouse, but in a different location. When Geyer arrived at work, he told Claimant that he wanted the lockers to use them to replace Employer's locker. Claimant stated that he proceeded to the dock area and backed his pickup truck to the loading dock, which was one foot higher than the bed of his truck. (R.R. at 8a-12a.)

2

Claimant explained that Geyer and another co-worker, David Conner, helped him unload the lockers. Geyer and Connor were standing on the dock while Claimant was in the bed of his pickup truck, and they lifted the bottom of the lockers and slid them onto the dock. Claimant stated that they jointly lifted the lockers and walked them onto the dock. While they were carrying the lockers, Claimant's co-workers stopped moving and placed the lockers down, but Claimant did not. Claimant said that, as a result, he fell forward and caught his hand on the side of the lockers, jammed his hand into the locker, and immediately felt excruciating pain. Claimant stated that the lockers were delivered to Employer's warehouse and, at the time of his deposition, the lockers were still being used at the warehouse to store Employer's supplies. (R.R. at 12a-14a.)

Claimant testified that after the accident occurred, he returned to his normal duties as a Catering Agent. Claimant said that shortly thereafter, he reported the incident to his supervisor, completed an incident report, and went to Crozer Taylor Hospital, where X-rays were performed and his hand was splinted. Claimant reported to Employer's administrative nurse the next day, who directed him to obtain treatment at the Philadelphia Hand Center. Claimant testified that David Zelouf, M.D., performed surgery on the shaft fractures in his fourth and fifth metacarpals on December 18, 2012. Following surgery, Claimant underwent physical therapy and Dr. Zelouf released him to light-duty work on January 30, 2013, and then full-duty work on February 25, 2013. (R.R. at 14a, 17a-20a.)

Claimant also presented doctor's reports describing his injuries. Employer did not present any evidence on its behalf, except for doctor reports concerning Claimant's injuries and a statement of wages.

On May 5, 2014, the WCJ issued a decision denying Claimant's claim petition. The WCJ found that Claimant suffered an injury to his fourth and fifth metacarpals while carrying his lockers to Employer's warehouse on December 16, 2012. (WCJ's Findings of Fact Nos. 4-5.) The WCJ also found that Claimant "was not required to report to the loading dock, since that was not his work area at any time;" Geyer was not Claimant's supervisor; and Claimant had not spoken to anyone in a management position about the deteriorating locker in Employer's warehouse. (WCJ's Findings of Fact Nos. 6-7.) The WCJ further found that Claimant did not seek permission from any management personnel to bring his personal property to the warehouse, nor did he have permission to use his personal vehicle to perform the delivery. (WCJ's Findings of Fact No. 8.)

Based upon these findings, the WCJ concluded, as a matter of law, that "Claimant was not engaged in the course and scope of his employment when he was injured." (WCJ's Conclusions of Law No. 1.) The WCJ determined that Claimant "was not engaged in furthering [E]mployer's business interests, but, instead, was a mere volunteer acting without his [E]mployer's knowledge." (WCJ's Conclusions of Law No. 1.)

Claimant appealed and the Board affirmed. In its decision, the Board stated:

> Claimant was unable to prove he was furthering the interests of [Employer] when he was injured. Claimant was required by the nature of his employment to be on the premises controlled by [Employer] when he was injured. However, the WCJ determined that Claimant was not furthering the business of [Employer] because his actions were voluntary, and [Employer] did not direct Claimant to provide new lockers nor was [Employer] aware that Claimant was going to replace the lockers. Claimant was not supervised by management. He may have believed he

4

was furthering [Employer's] interests, but he never inquired
about replacing the lockers with management.

(Board's decision at 5.)[1]  Accordingly, the Board agreed with the WCJ that Claimant was not injured in the course of his employment. *Id.*

## Discussion

On appeal to this Court,[2] Claimant argues that the Board and the WCJ erred in concluding that he was not in the course and scope of his employment at the time of the injury.  More specifically, Claimant contends that he was in the course and scope of his employment because he had clocked in,[3] was on the Employer's premises, and was acting in furtherance of Employer's interest by replacing a deteriorating locker.  Claimant asserts that there is no requirement that an individual

---

[1] The Board further concluded:  "Claimant is also unable to prevail on the theory that the condition of the premises caused his injury.  Claimant's own testimony shows that the loading dock where he was injured was intended for tractor trailers.  The height differential between the pickup truck and the loading dock played a significant part in his injury."  (Board's decision at 5.)

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated.  Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[3] As the Board noted, the WCJ made conflicting findings of fact regarding whether Claimant clocked in or not before transporting the locker.  (*See* WCJ's Findings of Fact Nos. 4, 8.)  Upon review of the record, the only evidence that exists as to whether Claimant clocked in prior to his injury is his February 8, 2013 deposition testimony, wherein Claimant was questioned, "And when you got to work, did you clock in?" (R.R at 10a.)  Claimant responded, "Yes." *Id.*

The Board noted that Employer did not question the veracity of Claimant's testimony that he clocked in, (Board's decision at 4-5), and, because there is no evidence to establish otherwise, this Court will accept the WCJ's finding that Claimant was clocked in before transporting the locker.

receive a positive work order to perform a function that furthers the interest of his employer. We agree.

Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1), provides that an injury must occur in the course and scope of employment and be causally related thereto in order for the injury to be compensable. The courts have developed two tests that are used to determine whether an injury was sustained in the course of employment. Under the first test, the question is whether the employee was actually engaged in the furtherance of the employer's business or affairs, regardless of whether the employee was upon the employer's premises. *Kmart Corporation v. Workers' Compensation Appeal Board (Fitzsimmons)*, 748 A.2d 660, 664 (Pa. 2000); *Marazas v. Workers' Compensation Appeal Board (Vitas Healthcare Corporation)*, 97 A.3d 854, 862 (Pa. Cmwlth. 2014).

Under the second test, the employee need not be engaged in the furtherance of the employer's business or affairs, however, the employee: (1) must be on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) must be required by the nature of his employment to be present on the premises; and (3) must sustain injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Kmart*, 748 A.2d at 664; *Marazas*, 97 A.3d at 862.

Initially, we observe that whether an employee is acting in the course of his or her employment at the time of an injury is a question of law, which must be based on the WCJ's findings of fact. *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa. Cmwlth. 2013). Nonetheless, it is the claimant who bears the burden of proving all elements

6

necessary to support an award of workers' compensation benefits. *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 861 (Pa. Cmwlth. 2011).

Typically, "[a]n activity that does not further the affairs of the employer will take the employee out of the course and scope of employment and serve as a basis for denial of the claim by the WCJ." *Wetzel v. Workers' Compensation Appeal Board (Parkway Service Station)*, 92 A.3d 130, 136 (Pa. Cmwlth. 2014) (citation omitted). However, "[t]he operative phrase 'actually engaged in the furtherance of the business or affairs of the employer,' which is usually expressed as 'in the course of employment,' must be given a liberal construction." *Id.* (citation omitted).

Here, as the WCJ found and the Board emphasized, Claimant was not performing his typical job duties on the premises at the time of the injury and did not receive express permission from Employer to install the locker, **but this alone does not take him outside the scope of his employment**. More precisely, the WCJ determined that, in replacing Employer's locker on Employer's premises, Claimant "was not engaged in furthering [E]mployer's business interests, but, instead, was a mere volunteer acting without his [E]mployer's knowledge." (WCJ's Conclusions of Law No. 1.) However, this Court has held that **these factors – lack of employer knowledge and performing unassigned tasks – do not place an employee outside the course and scope of employment**.

As recently emphasized by this Court:

An employe is entitled to compensation for every injury received on the premises of his employer during the hours of employment, regardless of whether he is actually required to be at the particular place where the injury occurred, **so long as there is nothing to show that he had abandoned the course of his employment or was engaged in something wholly foreign thereto**.

7

*Trigon Holdings, Inc.*, 74 A.3d at 362 (citation omitted) (emphasis supplied). In other words, "[a]n employee may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place, **yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof**." *City of New Castle v. Workmen's Compensation Appeal Board (Sallie)*, 546 A.2d 132, 134 (Pa. Cmwlth. 1988) (citation omitted) (emphasis added).

Consequently, the pertinent and dispositive inquiry in this case is whether, at the time of the injury, Claimant abandoned his employment or was engaged in an activity that is wholly foreign to his employment. While the general rule is that all on-premises injuries are in the course of employment, an employer may show abandonment or wholly foreign activity "when the employer can credibly argue that the employee was on the premises but in essentially a **non-employee** or **trespasser** status." 8 *West's Pennsylvania Practice, Workers' Compensation Law and Practice*, David B. Torrey and Andrew E. Greenberg (3rd Ed. 2008), §4:71 (emphasis added).

Such examples in our case law include situations where the employee was injured on the premises while the employee: (1) removed a hoist owned by employer and the employer permitted the employee to borrow the equipment for the *personal use* of his car, *Schirf v. Workmen's Compensation Appeal Board (Blairsville Machine Product Company)*, 658 A.2d 2, 3-4 (Pa. Cmwlth. 1995); (2) collected cans from the premises with the intention of selling them for his *personal benefit* and was struck by a car while crossing the street, *Pesta v. Workmen's Compensation Appeal Board (Wise Foods)*, 621 A.2d 1221, 1223 (Pa. Cmwlth. 1993); and (3) actively disengaged himself from his work responsibilities to polish a bolt with the employer's

8

tools for a *personal benefit*, i.e., to use the bolt for his child's go-cart, *Trigon Holdings, Inc.*, 74 A.3d at 364-65.

Other examples include where the employee was injured on the premises while the employee: (1) intentionally jumped down a flight of stairs, in a premediated and high-risk manner, on his way to lunch, *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949, 954-59 (Pa. Cmwlth. 2011); and (2) deliberately engaged in "foolish acts . . . in defiance of well-known physical laws, wholly foreign to one's duties," e.g., unintentionally soaked his leg with gasoline and set a match to the material after being dared to do so by other employees, *Carland v. Vance*, 10 A.2d 114, 115-17 (Pa. Super. 1939).

Finally, examples also include, in general, situations where the employee was injured on the premises while the employee returned to and/or stayed at the employer's premises after the work shift was completed, was not required to be on the premises at the time the injury occurred, and was on the premises to perform activities of a *personal* nature. *See generally Heverly v. Workmen's Compensation Appeal Board (Ship N Shore)*, 578 A.2d 575 (Pa. Cmwlth. 1990); *Pypers v. Workmen's Compensation Appeal Board (Baker)*, 524 A.2d 1046 (Pa. Cmwlth. 1987); *Giebel v. Workmen's Compensation Appeal Board*, 399 A.2d 152 (Pa. Cmwlth. 1979); Torrey, *Workers' Compensation Law and Practice*, §4:71.

In this case, Claimant's actions clearly do not fit into any of these categories of activities that evidence conduct that is wholly foreign to his employment. Most significantly, at the time of the injury, Claimant was not performing a task for his personal benefit or for the personal benefit of Geyer, his co-employee. To reinforce this proposition, we turn to a preeminent treatise, Larson's *Workers' Compensation Law*, which is a secondary source that our Supreme Court

9

has repeatedly consulted in assessing workers' compensation issues. *See, e.g.*, *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 746 A.2d 1108, 1112 (Pa. 2000); *Kusenko v. Republic Steel Corporation*, 484 A.2d 374, 380 (Pa. 1984); *Krawchuk v. Philadelphia Electric Company*, 439 A.2d 627, 632 (Pa. 1981); *Hinkle v. HJ Heinz Company*, 337 A.2d 907, 911 n.5 (Pa. 1975); *Unora v. Glen Alden Coal Company*, 104 A.2d 104, 107 (Pa. 1954).

When it comes to assisting co-employees, Larson's treatise states as a general rule: "**An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment**." Larson, *Workers' Compensation Law*, §27.00 (emphasis added). The treatise explains that public policy considerations promote this rule because "it would be contrary not only to human nature but to the employer's best interests to forbid employees to help each other on pain of losing compensation benefits for any injuries thereby sustained." *Id.* at §27.01(2).

The treatise further explains that "**the employee who honestly attempts to serve the employer's interests by some act outside the employee's fixed duties should not be held to the exercise of infallible judgment on what best serves those interests**." *Id.* (emphasis added). On the other hand, "[i]f the aid takes the form of merely helping the co-employee with some matter entirely personal to the co-employee, it is outside the course of employment, unless the deviation involved is insubstantial." *Id.* at §27.01(5). Here, it is clear that Claimant was on Employer's premises, was acting in furtherance of his Employer's interest, and had undertaken an activity solely to benefit Employer.

Even in other jurisdictions this principle is well recognized. In *Graves v. Builders Steel Supply*, 368 S.E.2d 188 (Ga. Ct. App. 1988), the claimant was employed as a "grinder" by the employer. In that capacity, the claimant used a grinding machine to smooth steel fence parts. After finishing his work, the claimant noticed that a belt on a drill press was loose and that the person who typically operated it was not on the premises at the time. Notably, the claimant did not receive authorization from the employer to use the drill press. Ultimately, the claimant injured his finger while trying to replace the belt on the drill press. On appeal, the Court of Appeals for the State of Georgia concluded that the claimant was entitled to benefits because the claimant was injured while performing an act that benefitted the employer; the act was incidental to claimant's regular work; and the claimant did not abandon the course and scope of his employment.

In the case *sub judice*, based upon the uncontroverted evidence and the WCJ's findings of fact, Claimant established that he made a genuine attempt to advance Employer's interest. In donating his lockers to replace Employer's deteriorating locker, Claimant was not merely helping Geyer with an entirely personal matter; rather, Claimant brought a replacement unit in order to store Employer's property. The fact that Claimant's lockers were still being used by Employer at the time of the WCJ's hearing not only shows that Employer actually received a benefit from Claimant's efforts, but also that Employer accepted the benefit. Significantly, the phrase, "actually engaged in the furtherance of the business or affairs of the employer," section 301(c) of the Act, 77 P.S. §411(1), as it is used in the Act, "applies to every detail necessary for the advancement of the business of the employer and in which the employee was engaged at the time of the accident." *Reinhard v. Egypt Silk Mill*, 26 Pa. D. 869, 870 (C.P. Lehigh Cnty. 1917).

11

It is therefore immaterial whether an employee is acting as a volunteer assisting another employee and/or beyond the scope of his original employment duties when undertaking a task that furthers the employer's interest. *Id.* (awarding benefits to a claimant, a silk worker, who had "voluntarily and without direction of any one took charge of a picking machine operated by an older boy, who had temporarily left the room," and suffered injuries while working the machine).

Notably, there is no evidence to demonstrate that Claimant engaged in an activity prohibited by Employer, violated a company policy, or otherwise imposed a detriment upon Employer. *See Graves*, 368 S.E.2d at 190-91 (explaining that it is the employer's burden of proving that the claimant's actions were outside the course of employment). Therefore, on this record, we conclude that Claimant's actions at the time of the injury were within the course and scope of his employment and were not so far removed from his job duties to constitute an abandonment of employment. Having satisfied the first test for compensability, i.e., being engaged in the furtherance of the employer's business or affairs, Claimant is entitled to benefits.[4]

---

[4] In his Dissent, Senior Judge Pellegrini expresses concern that the Majority's reasoning would remove any requirement that an injury occur on the employer's premises, thereby "making any injury that an employee suffers, no matter where, compensable." Slip op. at 4. In other words, the Dissent states that our Majority could be interpreted as holding that "once an employee decides to undertake an action that in some way could benefit an employer, any injuries incurred are compensable." Slip op. at 5-6. The Dissent further posits that a claimant is not in the course and scope of his employment merely because his actions result in some incidental benefit to an employer.

However, the Dissent's concerns are unfounded. In this case, Claimant sustained an injury on Employer's premises and during his normal work hours. Claimant's actions were not undertaken for his own personal benefit or the personal benefit of a co-employee. However, a question remained as to whether Claimant "abandoned the course of his employment or was engaged in something wholly foreign thereto." *Trigon Holdings, Inc.*, 74 A.3d at 362. The Majority concludes he did not. Under the factual scenario here, it would not be reasonable to interpret the Majority as holding that all injuries sustained by an employee whenever he believes he is furthering the employer's interests are compensable. Indeed, if an employee performs non-typical work tasks

**(Footnote continued on next page…)**

while off-duty, not on the premises, and for which he is not receiving pay, then the conduct would most likely have to be prompted by a direct request by the employer in order to be within the scope and course of employment. *See also Workmen's Compensation Appeal Board v. Hickory Farms of Ohio*, 367 A.2d 730, 731-32 (Pa. Cmwlth. 1976) ("[Employer] never requested claimant, either expressly or impliedly, to work on the records at home. Rather, the work was taken home for the convenience of the employe who wanted to spend as little time at the store the next day as she could. This is not a sufficient basis for liability."). In believing that all employee activities that could arguably benefit the employer would be compensable under the Majority's analysis, regardless of where they are performed and the circumstances of the employment arrangement, *see* slip op. at 5 n.3, the Dissent fails to realize that when an employee's job is "fixed" or "stationary" and to be performed solely on the premises, the course of employment is generally confined to activities conducted on the premises, as opposed to an employee who travels elsewhere as part of his job or is paid to work from home as part of his employment contract. *See Jamison v. Workers' Compensation Appeal Board (Gallagher Home Health Services)*, 955 A.2d 494, 498 (Pa. Cmwlth. 2008) ("What constitutes 'scope and course of employment' is broader for traveling employees than for stationary employees, and it includes driving to any appointment for the employer."); *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Alston)*, 900 A.2d 440, 445-46 (Pa. Cmwlth. 2006) ("Claimant . . . was working at her 'home office,' a fixed location approved by Employer as her secondary work premises. . . . Claimant . . . was engaged in furthering the business of her Employer because, at the time of her injury, she was speaking with her supervisor on the telephone and descending the stairs in order to address a work matter that her supervisor called to discuss with her."), *and compare with Hickory Farms of Ohio*, 367 A.2d at 731-32.

The Dissent also places heavy reliance on *Brookhaven Baptist Church v. Workers' Compensation Appeal Board (Halvorson)*, 912 A.2d 770 (Pa. 2006), but this reliance is misplaced. In *Brookhaven Baptist Church*, the claimant was injured when, after cutting shrubs with sheers, he burnt the clippings and caught on fire. Significantly, the claimant wore two distinct "hats:" one as a trustee/volunteer who was required by the nature of his employment to perform all grounds maintenance, including the trimming of bushes and trees; and the other was that of an employee, specifically limited by his employment agreement to cut grass. The critical issue was whether the claimant was engaged in the regular business of the employer such that he fit within the definition of an "employe" under the Act. Because the claimant was performing his duties as a trustee/volunteer at the time of the accident, the Supreme Court concluded that the claimant was not an "employee," but, rather, a volunteer, and therefore was not in the course of any employment relationship.

*Brookhaven Baptist Church* is distinguishable on two grounds. First and foremost, that case does not deal with the situation where, as here, an employee assists another employee with a work-related matter. If there was a co-employee in *Brookhaven Baptist Church* who was paid to work with the shrubs, and the claimant decided to help the co-employee burn the trimmings, the outcome

**(Footnote continued on next page…)**

We note that our result is consistent with well-established legal precedent from this Court, the Act's humanitarian purpose, and the rules enunciated in Larson's treatise and other jurisdictions.[5]

---

**(continued…)**

may very well have been different. Second, Claimant in this case does not wear two "hats" and have two delineated roles, with one being a volunteer and the other being an employee. Instead, Claimant is a paid employee (not a volunteer in any sense) and it would contravene public policy and common sense to prohibit an employee from helping co-employees further an employer's interest.

[5] The Dissent cites two sections of Larson's treatise, and case law referenced therein, that are clearly inapplicable to the current facts of record. First, the Dissent relies on section 27.00(3), which is entitled "trading jobs," and *Georgejakakis v. Wheeling Steel Corp.*, 86 N.E.2d 594 (Ohio 1949), to support the idea that benefits should be denied when an employee is acting outside the bounds of his employment. Slip op. at 6. However, the Dissent fails to mention that the claimant in *Georgejakakis* was injured while "engaged in an unauthorized venture," *id.* at 596, and the unique factual circumstances of that case. According to Larson, the claimant in *Georgejakakis*, a low-ranking floor sweeper, undertook another employee's job, i.e., operating a ring-pressing machine, out of curiosity and "envy" of "the fortunate employees who did the glamorous work of operating the big machines, [which] he quietly learned by continuous observation how the machines were run." Larson, *Workers' Compensation Law*, §27.00(3). Larson characterizes the claimant's conduct in *Georgejakakis* thusly: "[T]he claimant's **predominate motive was** not a good-faith intention to further the employee's work, but **personal curiosity**, so that the benefit to the employer was merely an incidental by-product." *Id.* (emphasis added).

Here, by contrast, Claimant was not performing another employee's job to satisfy a personal desire to operate a certain type of machinery or conduct a particular type of activity; *e.g.*, Claimant was not a dishwasher who, for the sake of fun or curiosity, decided to drive a bulldozer and was injured while doing so. Accordingly, this section of Larson's treatise is not informative in deciding the issue currently before this Court.

Second, the Dissent cites section 27.00(5), entitled "primary purposes co-employee's personal benefit," to conclude that Claimant should be denied compensation. Slip. op. at 7. The Dissent believes that Claimant's actions took "the form of merely helping [a] co-employee with some matter **entirely personal** to the co-employee" or "the **primary motive** of the assistance [**was**] not to help [Employer] but **to accommodate the co-employee**." *See* slip op. at 6-7 (quoting Larson, *Workers' Compensation Law*, §27.00(3) (emphasis added)).

**(Footnote continued on next page…)**

**Conclusion**

The precedent which the Majority follows is clear and in keeping with the legislative intent that the Act be liberally construed to effectuate its humanitarian objectives. *See Sporio v. Workmen's Compensation Appeal Board (Songer Construction)*, 717 A.2d 525, 528 (Pa. 1998) ("The Act is remedial in nature and its purpose is to benefit the workers of this Commonwealth. The Act is to be liberally construed to effectuate its humanitarian objectives. In addition, borderline interpretations of the Act are to be construed in the injured party's favor."). The Dissent's interpretation of this humanitarian Act, however, would result in denying compensation to any and all claimants who help co-workers further the business or affairs of the employer. Indeed, it is difficult to imagine a work environment where an employee would not assist another employee in carrying a heavy box containing the employer's supplies because it is not within the employee's specific job duties

---

**(continued…)**

As described and juxtaposed above, we are unable to discern how Geyer, the co-employee, had a personal investment in the locker or received a personal benefit from the locker. Geyer did not utilize the locker for his personal use; rather, the locker was used to store Employer's equipment. This is not a case where, for example, an employee is injured while transporting a pinball machine or a billboard table to a warehouse for employees to use during lunch or after work. The Dissent also frames Claimant's conduct as nothing more than "a personal favor" and "accommodation" to Geyer. Slip. op. at 7. We find this to be a difficult proposition to accept when Employer's locker was deteriorating and Claimant's locker replaced it; in these circumstances, if Claimant's actions are deemed to be a "favor," it would be a favor whose benefit inures primarily, if not solely, to Employer. *Cf. Gibbs v. Almstrom*, 176 N.W. 173, 173-74 (Minn. 1920) (denying compensation where a salesperson asked the plaintiff, "as a personal favor," to pick up his employer-sponsored automobile because he would not be in the city when the automobile arrived; the plaintiff was injured while transporting the automobile back to his own garage; and the court determined that plaintiff's conduct "was of no consequence or concern to the company" and "was purely a favor" to the salesperson) (cited in Larson, *Workers' Compensation Law*, §27.00(3)).

15

and the employee would have no legal recourse if injured. We award benefits in this matter because any other conclusion under these circumstances would have the natural and practical effect of thwarting an employer's day-to-day operations, by promoting friction and a potential stalemate amongst employees who do not wish to risk un-compensable injury in the face of uncertainty as to what all their job duties exactly entail – while, in the meantime, the employer's business needs are left unattended.

Accordingly, because the WCJ and the Board erred as a matter law in determining that Claimant was not in the course and scope of his employment, we reverse the Board's order and remand to the Board to remand to the WCJ for further proceedings consistent with this memorandum opinion.[6]

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] Due to our disposition, we need not reach Claimant's alternative argument that he met the second test for determining whether an injury was sustained in the course of employment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Grill,                       :
               Petitioner      :
                                      :   No. 1490 C.D. 2015
             v.                      :
                                      :
Workers' Compensation Appeal       :
Board (U.S. Airways),               :
               Respondent     :

## ***ORDER***

AND NOW, this 21st day of September, 2016, the August 18, 2015 order of the Workers' Compensation Appeal Board (Board) is reversed. The case is remanded to the Board to remand to the Workers' Compensation Judge for further proceedings consistent with this memorandum opinion.

        Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Grill,                                    :
                        Petitioner              :
                                                :
            v.                                  : No. 1490 C.D. 2015
                                                : Submitted: January 29, 2016
Workers' Compensation Appeal                    :
Board (U.S. Airways),                           :
                        Respondent              :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: September 21, 2016


        I respectfully dissent from the majority's reversal of the Workers'
Compensation Judge (WCJ) and the Board's decision to deny benefits because I
agree with them that Claimant was not injured while "actually engaged in the
furtherance of the business or affairs"[1] for which he was employed, but instead when

---

[1] Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1), provides:

> The terms "injury" and "personal injury," as used in this act, shall be
> construed to mean an injury to an employe, regardless of his previous
> physical condition. . . . The term "injury arising in the course of his
> employment," as used in this article, shall not include an injury
> caused by an act of a third person . . . but shall include all other
> injuries sustained while the employe is actually engaged in the

**(Footnote continued on next page…)**

he made a voluntary decision to leave his assigned work area to engage in an unauthorized task.

Claimant was employed by Employer as a catering agent to replenish catering carts on international flights. Claimant's coworker and friend, who worked as a warehouse agent in the warehouse's dock area, complained that the dock area's plastic locker was deteriorating. The dock area's plastic locker was used for storing brooms, chains, cleaning materials and other equipment used for loading and unloading trucks. Claimant offered his friend an unused steel locker stored at his residence. It is undisputed that Employer was unaware that Claimant was bringing his personal locker to the facility for use by his friend.

On the day of the incident, Claimant loaded his locker onto his personal pickup truck, drove to Employer's facility and then clocked into work. After his friend walked into the warehouse, Claimant backed his personal pickup truck next to the loading dock, which, because it is only used for loading and unloading tractor-trailers, was significantly higher than the bed of his pickup truck. While Claimant, his friend and another co-worker unloaded the locker, Claimant jumped onto the

---

**(continued…)**

> furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

dock, but because his co-workers suddenly stopped moving, Claimant hit his right hand against the locker causing him excruciating pain. Claimant stated that he eventually underwent surgery for injuries to his fourth and fifth metacarpals. He was released to light-duty work after approximately six weeks and to full-duty work approximately ten weeks after the injury.

Concluding that Claimant was not engaged in the course and scope of his employment because he was not furthering his Employer's interest and because he "was a mere volunteer acting without the Employer's knowledge," the WCJ denied the claim petition. (Supplemental Reproduced Record (S.R.R.) at 12b.) Claimant then appealed to the Board, which affirmed.

The majority reverses, finding that Claimant was injured during the course of his employment because "Claimant established that he made a **genuine attempt** to advance Employer's interest," Majority Opinion at 9 (emphasis added), and cites to Employer's purported *ex post facto* acquiescence of Claimant's behavior as support for its determination because it purportedly then used the locker.

The majority correctly points out that we recently stated in *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa. Cmwlth. 2013) that:

> An employe is entitled to compensation for every injury received on the premises of his employer during the hours of employment, regardless of whether he is actually required to be at the particular place where the injury occurred, so long as there is nothing to show **that he had abandoned the course of his employment or was**

**engaged in something wholly foreign thereto**.  (Citations omitted) (Emphasis added.)

Because the injury occurred at work and obtaining the locker advances the Employer's interest, the majority holds that the injury is compensable.

This is a difficult case because, on its face, Claimant's deviation from his employment to bring in his own locker in his personal pickup truck as a personal favor could be viewed as an "attempt" to advance Employer's interest and, because it occurred on Employer's premises, compensable.  The question, though, is more complicated because once we hold that when an employee volunteers to undertake an action that could advance the employer's interest, there is, however, no requirement that the injury occur on the employer's premises, making any injury that an employee suffers, no matter where, compensable.[2]  In other words, once an employee decides to

---

[2] However, there are other instances when:

> An employee's injury is compensable under Section 301(c)(1) of the Workers' Compensation Act . . . if the injury (1) arises in the course of employment and (2) is causally related thereto.  An injury may be sustained "in the course of employment" under Section 301(c)(1) of the Act in two distinct situations:  **(1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs;** or (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

**(Footnote continued on next page…)**

undertake an action that in some way could benefit an employer, any injuries incurred are compensable.

In this case, if we were to hold that he was advancing Employer's interest, Claimant would not only be entitled to compensation for injuries that he sustained on the clock and on the dock, but would be entitled to compensation if the locker fell on and broke his foot at home while attempting to load it onto his pickup truck or was injured if involved with a motor vehicle accident on the way to deliver the locker to work.

Just because Claimant's volunteering to bring his personal locker to work may involve some incidental benefit to Employer does not mean that his actions were undertaken in the "course of his employment." He brought the locker in as a personal favor to his friend, not as part of any employment as a catering agent. Like the WCJ and the Board, I would hold that someone who personally volunteers to fulfill a personal request of a fellow employee is not advancing the interest of employer, but has "abandoned the course of his employment or was engaged in something wholly foreign thereto."

Additionally, an action that is "attempting" to or incidentally benefits an employer is not the standard for determining whether Claimant "is actually engaged

---

**(continued…)**

*U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000) (Citations omitted; emphasis added).

in the furtherance of the business or affairs of the employer. . . ." Section 301(c)(1) of the Act, 77 P.S. §411(1). In *Brookhaven Baptist Church v. Workers' Compensation Appeal Board (Halvorson)*, 912 A.2d 770 (Pa. 2006), our Supreme Court held that voluntary actions – even well-intended ones – beyond an employee's designated responsibilities, are not within the course of employment.

In that case, an employee who was paid to cut a church's grass was fatally burned while destroying trimmings that he gathered while pruning shrubbery. In reversing our finding that the fatality was compensable because the task was "incidental to Decedent's employment," *id.* at 779, the Supreme Court held that "the proper question is not whether trimming the bushes was incidental to the grass-cutting task, but whether that activity was part of the employment arrangement." *Id.* Because "no trimming of bushes and overhanging tree limbs, no edging, picking up sticks, hand mowing, or garden work, all of which are necessary to maintain the grounds of the Church, were ever included in the fee to cut the grass," it held that the decedent's injury did not occur in the course of his employment as a grass cutter. *Id.*

Like in *Halvorson*, Claimant was not acting within the scope of his responsibilities as a catering agent when injured. As the Board stated:

> Claimant was unable to prove he was furthering the interests of [Employer] when he was injured. . . . . [T]he WCJ determined that Claimant was not furthering the business of [Employer] because his actions were voluntary, and [Employer] did not direct Claimant to provide new lockers nor was [Employer] aware that Claimant was going to replace the lockers. Claimant was not supervised by management. He may have believed he was furthering [Employer's] interests, but he never inquired about

DRP - 6

replacing the lockers with management. Claimant is also unable to prevail on the theory that the condition of the premises caused his injury. Claimant's own testimony shows that the loading dock where he was injured was intended for tractor trailers. The height differential between the pickup truck and the loading dock played a significant part in his injury.

(S.R.R. at 23b.)[3]

Accordingly, because Claimant was not injured during the course of his employment as a catering agent, I would affirm the Board's denial of Claimant's claim petition.

_____

DAN PELLEGRINI, Senior Judge

---

[3] Employer's purported *ex post facto* acquiescence to Claimant's conduct is not supported by substantial evidence and, in any event, is irrelevant. In finding that Employer acquiesced by purportedly using the locker, the majority incorrectly relies on testimony made by Claimant that was objected to by opposing counsel on the correct grounds that it was speculative in nature and purely based upon hearsay. In any event, even if this testimony is accepted, "[w]e have repeatedly held that merely allowing an employee to perform the act without directly ordering its performance will not support an award. . . . [T]he fact that Employer was aware . . . and did not prohibit it is not relevant." *See Pesta v. Workmen's Compensation Appeal Board (Wise Foods)*, 621 A.2d 1221, 1223 (Pa. Cmwlth. 1993) (internal citation omitted).